GARRETT P. ATCHISON

v.

WILLIAM DULLAM.

1. INJURY BY DISCHARGE OF GUN.—If a person is injured by the discharge of a gun in the hands of another who has entire control of it, the burden is cast upon the latter to prove that the gun was not fired at him either intentionally or negligently, but the result was inevitable and without the least fault upon his part.

2. ADMISSIONS BY WITNESS.—Where a witness who was present at the time of an injury was asked if he did not state to certain persons after the injury, that the defendant was not to blame, that it was an accident, etc., and upon his stating that he did not remember whether he said so or not, the persons named were called and allowed to testify as to what he did say. *Held*, that such admissions were merely expressions of an opinion, and incompetent, and so far immaterial as not to make a foundation for the introduction of impeaching evidence.

3. ADMISSIONS BY PARTY TO SUIT.—While there might not be the same strict rule applied as to the incompetency of such statements when made by a party to the suit as when made by an outside witness, they should not be made by the court in an instruction a controlling element in the case to such an extent as was done in this case.

ERROR to the Circuit Court of Boone county; the Hon. CHAS. KELLUM, Judge, presiding. Opinion filed February 5, 1885.

This action was commenced by plaintiff in error against the defendant in error to recover damages sustained by reason of injuries received from a gun-shot wound, the gun being discharged while in the hands of the defendant.

The first two counts of the declaration are in case averring .

Atchison v. Dullam.

negligence upon the part of the defendant in handling the
gun, by reason of which it was pointed at the plaintiff and
negligently discharged and the plaintiff thereby shot and
wounded. The last two counts are in trespass *vi et armis* in
the usual form.

The general issue was pleaded with the agreement that any
proof showing that the acts complained of were accidental or
occasioned by misadventure might be introduced under that
plea.

The evidence upon the trial established the following facts:
That in September, 1881, one George A. Stanley, an acquaint-
ance of the defendant who was a farmer residing in Boone
county, and the plaintiff, went from Chicago where they
resided, out to Dullam's to have a little recreation, and upon
arriving there they all went hunting that afternoon. The
next morning they intended to leave, but Dullam invited
them to remain, and he would go with them after game.
They got into a buggy and drove out into the woods, when,
upon the suggestion of the defendant, they hitched the team
and alighted from the buggy. Stanley and the plaintiff each
had a double barreled breech-loading shot gun, and when
they got out of the buggy, Stanley gave his gun to the de-
fendant, and they started along in a northeast direction, the
defendant upon the right, Stanley next, and the plaintiff at
the left and slightly in front. When the gun was taken by
Dullam from Stanley he cocked both hammers and traveled
along with the gun in that condition. After going about
seventy-five yards, the defendant fired one barrel at a bird
and killed it, and desiring to reload the discharged barrel,
attempted to break down the gun so he could insert a new
cartridge, and at this point Stanley said to him, "Here is a
shell," and the defendant then turned around toward the left,
and while still fumbling the gun, permitted the muzzle to
point directly toward the plaintiff, then not over six feet dis-
tant and in full view, and the other barrel being discharged,
its contents struck the leg of the plaintiff below the knee, ne-
cessitating amputation.

A trial being had, the jury rendered a verdict in favor of

the defendant, under the instructions of the court, and the plaintiff sued out this writ of error.

Mr. J. C. GARVER and Mr. R. S. TUTHILL, for plaintiff in error; cited Morgan v. Cox, 22 Mo. 373; Underwood v. Hewson, Strange, 596; Cole v. Fisher, 11 Mass. 137; Chataigne v. Bergeron, 10 La. An. 699; Cooley on Torts, 674; Tally v. Ayres, 3 Sneed (Tenn.), 677; 1 Thompson on Negligence, 238; Welch v. Durand, 36 Conn. 182.

Mr. A. B. COON and Mr. T. D. MURPHEY, for defendant in error.

PILLSBURY, J.   As early as Weaver v. Ward, Hobart, 134, trespass was allowed to be a proper form of action for the recovery of damages sustained by the plaintiff from a discharge of a gun in the hands of the defendant.   An action of trespass *vi et armis* having been brought, the defendant pleaded that he and the plaintiff were soldiers in the same company, and by order of the commandant they were engaged with another company in military exercise in which the discharging of the guns was a part, and that his gun, by accident and misadventure and without his will, was discharged, by which the plaintiff was injured.   Upon demurrer it was held that the defendant could only excuse himself by showing that he was utterly without fault, and a plea which did not show that the injury was inevitable and that the defendant had committed no negligence to give occasion to the hurt was bad, and judgment was given for the plaintiff.

Underwood v. Hewson, Strange, 596, is a case holding that where the defendant was uncocking his gun, the plaintiff standing by to see it done, and the gun was accidentally discharged, wounding the plaintiff, the defendant was liable in trespass; and Sewell, C. J., in Cole v. Fisher, 11 Mass. 137, says that the decision in that case has never been questioned.

But whether the liability of the defendant is sought to be enforced in an action of trespass or in any action on the case

can make no particular difference as the rule of law upon which the defendant's liability is to be established is the same in either form of action.

Tally v. Ayers, 3 Sneed, 677, was an action to recover for the loss of a mare by being shot by the discharge of a gun in the hands of the defendant. The mare of the plaintiff was standing hitched near a store in the town, and the defendant starting for home, took his rifle from the store, where he had left it on arrival at the town, and when in the act of placing it upon his shoulder, by some means it was discharged, killing the plaintiff's mare. It was found that the discharge of the gun was accidental and without the concurrence of the plaintiff's will. The defendant was held liable, the court saying: "To constitute an available defense in such cases it must appear that the injury was unavoidable, or the result of some superior agency without the imputation of any degree of fault to the defendant." "The very fact that the gun 'went off' under the circumstances detailed in the proof implies some inadvertent act, or want of proper caution on the part of defendant." "The lock must either have been defective, or some agency must have been exerted, unintentionally and perhaps unconsciously by the defendant, otherwise the discharge of the gun could not have happened. And in either view the defendant is alike amenable for the consequences."

Chataigne v. Bergeron, 10 La. Ann. 690, was an action to recover damages for injuries from a gun-shot wound. The admission of the defendant showed that he and the plaintiff met, both having guns, and some words passed between them; he stooped to pick up a stick, and his gun accidentally went off, and wounded the plaintiff. The court held him liable, saying that assuming his statement to be true, he would not be relieved from liability for damages incident to his gross neglect in handling his gun.

Morgan v. Cox, 22 Mo. 373, was a case where the plaintiff and his servant (a slave) were engaged in driving a cow across the Osage river, and the plaintiff asked the defendant, who was out hunting, to assist them, and the defendant consenting, used his gun in punching at the cow, and in replacing it across

his horse, the hammer struck the saddle, as he supposed, and being discharged killed the slave of the plaintiff, and in an action to recover the value of the slave, the court held, that the burden was upon the defendant to show that the gun was discharged by inevitable accident and without the least fault; that a mere misadventure and without the wrongdoer intending it, was not enough to excuse the trespass, and the defendant was held liable.

These adjudications which we admit as authorities, and give our unqualified approval to the conclusions therein reached, clearly show how strictly the law holds a party responsible for injuries inflicted upon another in the use or handling of firearms. They determine that if a person is injured by the discharge of a gun in the hands of another who has entire control of it, the burden is cast upon the latter to prove that the gun was not fired at him either intentionally or negligently, but the result was inevitable and without the least fault upon his part.

Fire-arms are not usually discharged without the intervention of some human agency. A presumption, therefore, almost conclusive in its character, is raised, that when such weapons are discharged while in the possession and control of another, the firing is caused either by design, carelessness or inadvertence upon his part.

Applying the rules of law as announced in the decisions cited to the facts in this case, it becomes difficult to see how the defendant can be excused from the responsibility of causing the injuries to the plaintiff. The facts proved can be reconciled only on the theory that the defendant in fumbling about the breach of the gun, in order to break down the barrels must have touched the trigger of the cocked barrel and thus discharged it. The proof is that the defendant stated it must have occurred in that manner. This act of his, though unintentionally and perhaps unconsciously done, coupled with the further fact that while thus attempting to break down the gun he turned partially around, and in so doing permitted the gun to bear directly upon the plaintiff, then not more than six feet distant and in full view, clearly proves to our

minds that the defendant was grossly negligent in handling his gun.

He testifies that he knew the gun was hard to break down, and light on the trigger, and having such knowledge, even common prudence and care would have required him in breaking it down, while cocked, to keep the gun in such a position that it could not have possibly injured his companions if discharged.

The first instruction given for the plaintiff, while perhaps correctly stating an abstract proposition of law applicable to ordinary actions of negligence where contributory negligence is relied upon as a defense, we think should not have been given in this case. We fail to find any evidence in the record that the plaintiff by any act of his contributed to the injury in the least. He knew, it is true, that the defendant had the gun, and that he was within striking distance of it, but could not suppose that the defendant would point it toward him when cocked and then attempt to break it down. The third instruction for the defendant is erroneous, in that it casts upon the plaintiff the burden of proving the wrong, fault or want of care upon the part of the defendant that caused the injury. This could only have been understood by the jury as requiring the plaintiff to show *how* the gun was discharged by the defendant, and lead them to conclude that plaintiff had not made out a case, by simply showing that while the defendant had control of the gun it was discharged and the injury ensued. As we have seen, the plaintiff, having shown that the defendant, while handling the gun, caused it to be pointed toward him, within striking distance and in full view, and that the gun was fired and a consequent wounding, his case was *prima facie* complete; and if the defendant would excuse himself from liability the *onus* was upon him to show such facts as would, under the law, exonerate him.

Stanley was a witness for the plaintiff, and after detailing the facts, within his knowledge, attending the injury, was asked upon cross-examination, if he had not stated to certain persons after the injury that the defendant was not to blame, that it was an accident, etc.; and upon his stating he did not

remember whether he had so stated, the parties named were called as witnesses by defendant, and were allowed to state what he did say to them. To this action of the court the plaintiff saved exceptions. In allowing impeaching testimony we think error was committed. At most, it was but a mere expression of opinion upon his part which would be incompetent for him as a witness to state to the jury, and so far immaterial as not to make a foundation for the introduction of impeaching evidence. Mutcha v. Pierce, 49 Wis. 231; Teal v. Meravey, 12 Bradwell, 31.

Besides, he was not a party, and his testimony was confined to facts upon which the jury were to form opinions uninfluenced by his belief as to who was to blame, as his opinion might be, as we have seen it was in fact, very incorrect.

The same class of testimony was introduced regarding statements made by the plaintiff; and while we are not prepared to hold the same strict rule as to the incompetency of such statements and admissions when made by a party to a suit as when made by an outside witness, we think such statements should not be made by the court in an instruction a controlling element in the case to such an extent as appears to have been done by the defendant's fourth instruction given on the trial. C., B. & Q. R. R. Co. v. Warner, 108 Ill. 538. The jury should form their own opinion as to who was in fault from a consideration of all the facts in the case rather than from the opinion of any witness as to the legal effect of such facts, especially in cases where expert testimony is not required or allowable. Other objections have been made to the action of the court in giving and refusing instructions, which are unnecessary to be noticed in detail, as upon another trial they can be made to conform to the views herein expressed.

The judgment will be reversed and the cause remanded for a new trial.

Judgment reversed.