STANLEY SKINNER v. R. H. OCHILTREE
5 So. (2nd) 605
En Banc
Opinion Filed December 9, 1941
Rehearing Denied February 2, 1942

*G. P. Garrett,* for Appellant;

*J. W. Hunter* and *W. B. Hunter*, for Appellee.

CHAPMAN, J.—This case is here for review on writ of error to a final judgment for defendant below entered by the Circuit Court of Lake County, Florida. The declaration was in two counts—the first count alleged simple negligence, while the second count charged gross negligence. The pertinent allegations of gross negligence are viz:

"(a) On, to-wit, the 22nd day of October, A.D. 1938, in, to-wit, Lake County, Florida, the defendant, R. H. Ochiltree, a skeet shooter then and there using a certain skeet range used by the Eustis Gun Club was grossly negligent and grossly careless in firing

a charge from a short gun in the direction of the 'high house' of said skeet range wherein the spring target was then and there being operated by plaintiff, Stanley Skinner, and by reason of said gross negligence and gross carelessness of the defendant, shot from the said charge from the shot gun of the defendant struck the said plaintiff. Two of said shot entered the left eye of said plaintiff, one of which then and there destroyed the sight of said left eye, and the injury to the left eye thus sustained by sympathy affected the right eye of the plaintiff by reason whereof the plaintiff is now threatened with the loss of the sight of his right eye and, therefore, with total blindness in both eyes. Other of said shot embedded themselves in the face, one ear, left eye and nose of plaintiff, and some there yet remain."

Similar allegations of simple negligence appear in the first count. The issues were submitted to a jury on pleas of defendant below to both counts of the declaration and were viz: (1) not guilty; (2) that the plaintiff contributed to his own injury by failing to keep the safety device provided for his protection on the skeet range in proper position; (3) that he negligently and carelessly used the safety device provided for his protection; (4) that plaintiff conducted himself in a negligent and careless manner. There was a verdict and judgment for defendant below. Plaintiff below presented his motion for a new trial and the same overruled and denied, when he took writ of error and perfected an appeal here.

The record discloses disputes and conflicts on certain pivotal points in the testimony but not on other essential issues, and few controverted points exist. The defendant below admitted the control and posses-

sion of the 12 guage Winchester pump shot gun and the discharge of the shot therefrom that wounded the plaintiff. The difficulty here and in the lower court was applying the correct principles of law to the facts. The lower court, in a number of instructions to the jury, made an honest and sincere effort to define the legal duties and relations of the parties when plaintiff sustained his injuries. The several instructions of the trial court to the jury are here attacked and defended by counsel for respective parties.

It is settled law in many jurisdictions that the highest degree of care is exacted of those handling firearms. They are classified as dangerous instrumentalities and the highest degree of care is exacted so as to prevent injuries to others. The highest degree of care is necessary in the manipulation or use of firearms in the presence of or in the vicinity of others so as to avoid injuries to others, and if injury results from the negligent discharge of firearms used or handled by another, although the discharge thereof is accidental in the sense that it was not intentional, the law makes the person causing the injury liable. See Shearman & Redfield on Negligence, Vol. 3 (6th ed.) p. 1786, par. 686; 68 C. J. pp. 71-2 par. 87; Petry v. Hopping, 97 N. J. Law 418, 118 Atl. 105; State, *ex rel.* Johnson v. Cunningham, 107 Miss. 140, 65 So. 115, 51 L.R.A. (N.S.) 1179; Loreno v. Ross, 222 Ala. 567, 133 So. 251, 20 R.C.L. p. 52, par. 251.

The record discloses that the plaintiff, Stanley Skinner, a nineteen year old high school boy, was operating the spring target ejector situated in the "high house" at the Eustis Gun Club. The high house is equipped with an aperture through which

the target is ejected into the air to be shattered by the gunner. The plaintiff was employed by the City of Eustis to place the targets on the spring ejector in the high house. The high house was constructed of material that could not be penetrated by the shot ordinarily used to shatter targets. The aperture of the high house through which the targets were ejected, and where plaintiff was employed to sit and place the targets, possessed a shutter, which was susceptible of being raised and lowered and fastened by pegs, and the aperture could be decreased or increased by the plaintiff by arrangements of the pegs holding the shutter. The plaintiff was injured by shots striking him from a gun held by the defendant and discharged at shooting position No. 7 at a distance of approximately forty-five yards. The two shot taken from plaintiff's eye were No. 9 lead shot.

A target was released on the request of the shooter who gave the command "pull." It was undisputed that the employees manipulating the targets would release the same when the gunner gave the command "pull." When plaintiff was injured the gunner had not given the command "pull." It was the custom of shooters to approach each shooting station on the skeet range with an unloaded gun. When the shooter placed himself at the shooting station he placed shells in his gun, placed it in position and would give the command "pull," when the target would be ejected. On the day of plaintiff's injury defendant was shooting a Winchester 5-shot pump gun. He placed himself at shooting station No. 7 of the skeet range and dropped a shell in the pump gun, and in so doing it was necessary to turn the pump gun on its side or bottom upwards and then place the shells in the

magazine from the bottom, not through the side, then pull the ejector back and shove it forward, thus taking the shell from the magazine into the barrel. It is possible to pull the ejector of the pump gun back and when it is back a shell may be dropped into the open breach, but frequently in loading a pump gun a shell fails to go into the barrel and drops into the magazine, the ejector being open, then the ejector is pushed forward and the shell is placed in the barrel. The trigger of the gun is cocked by the ejector when placing a shell in the barrel and all that is necessary to fire the gun is to touch the trigger.

One witness testified in the case at bar that the defendant did not touch the trigger but that the force of the ejector placing the shell in the barrel caused the plunger to strike the firing cap in the shell. The defendant testified that in loading the gun the shell dropped through the action (magazine) and did not go in the barrel as intended. He observed this situation and turned the gun over and shook it so as to shake the shell back in its correct position so that the action or magazine could be closed. When the defendant closed the action (magazine) the gun went off and eleven shot therefrom struck the plaintiff in his face and two shot entered his left eye and thereby destroyed its vision.

It is well settled that this Court when reviewing instructions to a jury given by the trial court and assigned as error, the appellate court will not consider a part of an instruction, or a single instruction and rule thereon, but it is the law that the entire instructions will be considered, and if the instructions assigned as error, considered in the light of the entire charge given, is reasonably free from error, then the

charge as given will be sustained. See International Lubricant Corp. v. Grant, 128 Fla. 670, 175 So. 727; Bishop v. State, 136 Fla. 268, 186 So. 413; Hysler v. State, 132 Fla. 209, 181 So. 354; Tampa Shipbuilding, etc. Corp. v. Adams, 132 Fla. 419, 181 So. 403, 893; Pendarvis v. Pfeifer, 132 Fla. 724, 182 So. 307; Atlantic Greyhound Lines v. Lovett, 134 Fla. 505, 184 So. 133; Anderson v. State, 133 Fla. 63, 182 So. 643; Varnum v. State, 137 Fla. 438, 188 So. 346.

It is shown by the record that the defendant had approached Station No. 7 on the skeet range, which was approximately forty-five yards from the point where plaintiff was sitting when shot. His exact position was clearly discernible to him through the aperture of the high house through which the targets were released. The position of the shutter designed to protect the plaintiff over the aperture was clear and discernible to the defendant when he dropped his shell in the pump gun. The defendant had not given the command to "pull" prior to the firing of the gun which wounded the plaintiff. It was on a hot October afternoon and the high house by construction was poorly ventilated. The plaintiff, after hearing the command "pull," could easily have moved his head and shoulders below the aperture and would not have been hit. Plaintiff's counsel requested and was refused the instruction viz:

"PLAINTIFF'S REQUESTED INSTRUCTION NO. 14

"The Court instructs you that if you find from the evidence that the defendant, R. H. Ochiltree, had no right to discharge his gun until the clay pigeon or target was released into the air as a target for him to shoot at and that the gun was negligently dis-

charged by the defendant before the target was released, then you must find for the plaintiff, Stanley Skinner. Exception noted for plaintiff."

It is our view, in the light of the entire charge, that the above instruction should have been given to the jury.

Plaintiff through counsel requested but the trial court refused to instruct the jury on the law of *res ipsa loquitur* viz:

"PLAINTIFF'S REQUESTED INSTRUCTION No. 16

"The Court instructs you that if you find from the evidence that the plaintiff was shot in the face and injured by a gun in the hands of the defendant at the time said gun discharged or fired and that said gun was under the exclusive control and management of the defendant, and that the firing of said gun shot into the face of the plaintiff was such an occurrence as in the ordinary course of events would not happen if due care had been exercised by the defendant, then these facts alone would afford you sufficient evidence to find for the plaintiff in the absence of any sufficient explanation on the part of the defendant tending to show that the injury was not due to his want of care; in other words, the burden would fall on the defendant to explain the act of the shooting of the plaintiff in the face with said gun and if the defendant failed to explain said act to your satisfaction or rather by a preponderance of the evidence, then you would have sufficient evidence to find for the plaintiff."

We think this refusal was error. See American District Electric Protective Co. v. Seaboard Air Line Ry. Co., 129 Fla. 518, 177 So. 294.

Plaintiff through counsel requested but the trial court declined to give to the jury the instruction viz:

"PLAINTIFF'S REQUESTED INSTRUCTION No. 18

"The Court instructs you that if you find from the evidence that the plaintiff has negligently exposed himself to the risk of being shot by the defendant and that by looking or exercising the vigilance required of him, the defendant would not have discovered the plaintiff's peril, then you should find for the defendant; but if you find from the evidence that the defendant, by looking and exercising the vigilance which it was his duty to the plaintiff to exercise, would have discovered the plaintiff's peril and that thereafter the defendant failed to properly look where his gun was pointing and failed to exercise or make use of his ability to avoid shooting the plaintiff and negligently and carelessly discharged his gun and thereby injured the plaintiff, then you should find for the plaintiff."

We think this refusal, in light of the facts adduced and all the charges considered in their entirety, was erroneous. See Miami Beach Railway Co. v. Dohme, 131 Fla. 171, 179 So. 166.

The Court charged the jury at plaintiff's request that plaintiff was entitled to lawful interest of 8% from the accrual of the cause of action. This was error. In tort actions, interest runs from the judgment. Latta v. New Orleans & N. W. Ry. Co., 131 La. 272, 59 So. 250. Lawful interest on judgments is 6% interest. Chapter 16051, Acts of 1933, Laws of Florida.

For the errors appearing in the record the judgment appealed from is reversed and a new trial awarded.

It is so ordered.

BROWN, C. J., WHITFIELD, BUFORD, THOMAS and ADAMS, J. J., concur.

TERRELL, J., dissents.