SCOTT M. LOFTIN and JOHN W. MARTIN, as Trustees of the Property of Florida East Coast Railway Company, v. CHARLES R. DAGLEY.

13 So. (2nd) 311                                      January Term, 1943
April 27, 1943                                                   En Banc
Rehearing Denied May 24, 1943

832

*Russell L. Frink, John H. Summerlin* and *J. Henry Taylor,* for appellants.

*P. W. Harvey* and *Curtis Basch,* for appellee.

SEBRING, J.:

Defendants' railroad tracks extend north and south through the City of Port Orange. Within the city limits, they pass over Dunlawton Street, which runs east and west. At the point of intersection, the Railway Company maintains a public crossing.

Although Dunlawton Street is 50 feet wide, and its entire width is used for pedestrian travel, a strip of the street only 20 feet wide is hard-surfaced for vehicular traffic. Where the defendants' tracks pass over this strip, the Railway Company maintains a wooden crossing for the purpose of general traffic on the highway. This crossing is constructed of heavy planks laid parallel to the rails and spiked to the cross-ties. From this crossing there is an uninterrupted view southward along

the tracks for a distance of 3471.2 feet. At that point, the tracks describe a curve.

Early on the morning of October 1, 1941, the plaintiff, Dagley, left home, driving his automobile eastward upon and along Dunlawton Street. It was not yet daylight. A light rain was falling. The morning was foggy. Just as Dagley drove over the crossing he observed that his dog was following him. When he discovered this, he stopped the car and walked back on the crossing to drive the dog home. In furtherance of this purpose, he picked up a small stone from the crossing to shy at the animal. While doing so his foot became lodged horizontally in the flangeway between the west rail of the north-bound tracks and the plank directly inside it. While feverishly working to extricate himself from this position, he heard and saw a north-bound passenger train approaching at high speed. This train had not been within sight or hearing when Dagley had first become entrapped at the crossing. As the train was almost upon him, he finally succeeded in wrenching his foot loose from his shoe and pulling it free. The sudden dislodgement of the foot caused him to stumble and fall away from the west rail, eastward. This placed his body beyond the east rail. In some unexplained fashion the locomotive struck his left arm severing it above the wrist.

Plaintiff sued the defendants for negligently failing to keep and maintain the crossing in good condition, and for negligently running the train upon him before he could wholly remove himself from its path of travel. Judgment was recovered in the sum of $10,000.00. Defendants appealed.

The defendants claim that they were entitled to a directed verdict at the close of all the testimony, because the evidence shows that plaintiff was a trespasser and the only duty owed him was to refrain from wilfully or wantonly injuring him after they could have discovered his position of peril. This contention is based upon the premise that as it is admitted that plaintiff came back on the tracks for the sole purpose of driving his dog home, he was not then rightfully using the crossing for the purpose for which it was constructed and maintained; i.e., for the purpose of passage over the tracks.

We cannot agree with this conclusion. In our view, it is not a trespass for an individual to be on a public crossing in a town or city, whether there for business, pleasure, or mere caprice. Florida Cent. & P.R. Co. v. Williams, 37 Fla. 406, 20 So. 558. Whatever his purpose there, he must be considered, in law, as being rightfully there; and the railway company owes him the duty of exercising ordinary and reasonable care for his safety. 44 Am. Jur. 733, Sec. 494.

The defendants also complain of the trial court's refusal to strike certain testimony of a rebuttal witness, who, in speaking of the physical condition of the crossing on the morning of the accident, testified that in his opinion it was dangerous to pedestrians using it; that it had been in such condition for several years prior to that time; and that some 3 years and 4 months before the injury to the plaintiff his own child had caught its foot in the same crevice and had been extricated from its position just in time to·prevent injury from an approaching train.

Prior to the time that the witness had given this particular testimony certain defense witnesses who, as employees of defendants were charged with the manual duty of maintaining the crossing in question, had testified that from their personal observation of the crossing it was in "good" condition. The plaintiff did nothing more than meet this testimony by producing a rebuttal witness who stated that from his personal observation of the crossing its condition was dangerous. Before this statement was made, the witness had testified that he was a carpenter of 20 years' experience; that he had had experience in building tramroads; that he had passed over this particular crossing at least 3 times a week for more than 17 years; that during that period of time very little work had been done in the maintenance of the crossing, and that, generally, its maintenance had been neglected; that the planks of which the crossing was constructed had not been changed during that entire period of time and as a result had become split, weathered, and warped; that because of train travel over the rails, and general travel over the street; the rails had sunk and the spikes had pulled from the planks causing the planking to become loose and insecure; that such

condition had existed for many years prior to the accident; that a small piece, or chunk, had split off from the south end of the plank next to the west rail of the north-bound tracks; that as a result of all these things there was, and had existed for several years prior to the accident, a crack or crevice between the plank and the rail that in several places was at least 4 inches wide, whereas its maximum width should not have been more than 2 inches; that where the 4 inch crevice existed the shoe of an adult could be easily inserted in a horizontal position in the flangeway.

With this testimony as a predicate, we cannot see how the conclusion drawn by the witness to the effect that the crossing was dangerous may be criticized as harmful error.

Nor can we say that under the circumstances the trial court erred in refusing to strike the statement of the witness as to the accident that happened to his child at the same spot some 3 years and 4 months before the accident, as being too remote in point of time. The statement was relevant and admissible to show the dangerous condition or character of the place of injury; it having been previously testified to that the same condition had prevailed continuously from the time of that incident up to the time of the injury to the plaintiff. 1 Greenl. Ev. Sec. 51A; 2 Jones Commentaries on Evidence, 2 Ed. 1265; 38 Am. Jur. 1012, Sec. 314; 45 S.J. 1246, Sec. 811.

Exceptions were taken to certain charges given by the court to the jury, and certain charges refused. These have been carefully considered in the light of the whole charge given by the court and we do not find reversible error there. Under the law it was the duty of the railway company to "maintain and keep in good condition" the public crossing in question. Sec. 375.01 F.S. 1941, F.S.A. Sec. 357.01. The company was liable for an injury resulting from a negligent breach of this duty, if its breach in this respect was the proximate cause of the injury. The trial court made this clear in its instructions. It charged also that if there was some independent efficient cause of the plaintiff's injury other than the act of the Railway Company, the jury must find the defendant not guilty. It also instructed the jury that even if they found that the crossing was in fact defective, still the

plaintiff could not recover unless it had also been shown that the defect had existed for a sufficient length of time to charge the defendant with notice of it.   Considering the instructions excepted to, and the instructions refused, in the light of the entire charge given by the court and the pleadings and evidence in the case, we think that the charge was reasonably free from error and should be sustained.   Georgia Southern & F. Ry. Co. v. Hamilton Lbr. Co., 63 Fla. 150, 58 So. 838; Skinner v. Ochiltree, 148 Fla. 705, 5 So. (2nd) 605, 140 A.L.R. 410.

Due consideration has been given to the contention that the verdict is excessive.   The trial was fairly conducted and there was ample evidence to support a verdict in favor of the plaintiff.   In such case damages for personal injury will not be reduced unless the amount found is so excessive as to indicate prejudice, passion, corruption, or some other element that may have improperly influenced the jury.   Dunn Bus Service v. Wise, 140 Fla. 341, 191 So. 509.   This does not appear.

The judgment is affirmed.

.It is so ordered.

BUFORD, C. J., TERRELL, CHAPMAN and THOMAS, JJ., concur.

BROWN and ADAMS, JJ., dissent.

ADAMS, J., dissenting:

.I dissent because the charge on presumption against the Railway is virtually identical with one condemned by us in Skelton v. Loftin filed at this term.   The negligence which proximately caused the injury was the defective crossing and not the running of the locomotive (Sec. 7052 C.G.L.) hence I question whether the statute might have, under any circumstances, had any application.

: BROWN, J., concurs.

BROWN, J., concurring:

. I am inclined to the view stated by Mr. Justice ADAMS. If, however, the court *was* justified in charging on the presumption statute, I think the court should have instructed the

jury that this presumption did not apply to the count based on the alleged negligence in the failure to maintain the crossing in safe condition. Furthermore, if the charge on the presumption statute was justified, the Court should have given the requested charge on contributory negligence as defined in the same Statute. Sections 7051, 7052 and 7053, C.G.L. are all parts of a single statute.