**NORLING v. CARR.**

No. 10976.

United States Court of Appeals, Seventh Circuit.

April 7, 1954.

898

Clarence M. Dunagan, Charles D. Snewind, Chicago, Ill., for appellant.

P. W. Lanier, Jr., Fargo, N. D., Thomas W. Donahue, Chicago, Ill., Lanier, Lanier & Knox, Fargo, N. D., for appellee.

Before MAJOR, Chief Judge, and LINDLEY and SWAIM, Circuit Judges.

MAJOR, Chief Judge.

Plaintiff, a resident of North Dakota, brought this action against defendant, a resident of Illinois, for personal injuries sustained when plaintiff was shot, allegedly by defendant, while duck hunting in a slough near Devil's Lake, North Dakota. The case was tried to a jury, which rendered a verdict adverse to defendant, and assessed plaintiff's damages in the sum of $18,000. Upon this verdict a judgment was entered from which the defendant appeals.

The contested issues presented in this court are: (1) That the evidence is insufficient to support the verdict because (a) it does not show that plaintiff was injured by a shot fired from the defendant's gun, and (b) if so, the evidence is insufficient to disclose negligence on the part of defendant. The question of the insufficiency of the proof was appropriately raised by a motion for a directed verdict both at the close of plaintiff's case and at the conclusion of the trial, as well as by defendant's motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial. (2) That the complaint fails to state a cause of action entitling plaintiff to relief. (3) That the court erred in admission of testimony offered on behalf of plaintiff.

In the early morning of on or about October 18, 1948, plaintiff and defendant, together with a Mr. Engh, a Mr. Firring and a Mr. Dorr, went to a slough (sometimes called a swamp) adjacent to an open lake, for the purpose of hunting ducks. Each of the parties was possessed of a shotgun and, in addition, defendant had with him a small boat, together with decoys and other hunting equipment. The slough extended generally in a northwest and southeast direction on the west side of the lake or open stretch of water. The slough was wet and marshy and covered with a thick growth of weeds perhaps five or six feet in height. Firring, Carr, Norling and Dorr each took a position in the slough amid the weeds where they would be secreted from the view of ducks which might approach. They were located some twenty-five or thirty yards apart, the defendant southeast of Firring, Norling southeast of Carr and Dorr southeast of Norling. There was some water at the point where Carr was stationed and he was in his boat. Engh was out in the water among the decoys, retrieving a duck previously shot, some thirty-five yards north and to the east of Carr. About 11 a. m. a single duck flew over the general area where the men were stationed. Dorr, plaintiff and defendant all shot at the duck, first Door with one shot, then plaintiff with one shot, and afterward defendant with three shots. At the time defendant fired his last shot or shortly thereafter, it was discovered that plaintiff had received a gunshot wound, mostly in his right leg and hip. Afterward it was determined that more than one hundred No. 4 pellets or shots entered his body.

While we are making no attempt to state the evidence in detail, we think it fair to mention that another hunter, in addition to the five members of the party as enumerated, was brought into the picture. This unknown party is referred to in the record as "Mr. O. D. stocking cap," so designated because his head covering was the olive drab kind worn in the Army. Defendant, Firring and Dorr all

testified as to the presence of this stranger, while plaintiff and Engh denied his presence or that of any sixth person. In fact, plaintiff now brands this stranger as a mythical man. In any event, Dorr testified that this stranger was stationed between Dorr and plaintiff, and that it was the stranger and not Dorr who fired the first shot at the duck.

Admittedly, there is no direct evidence that defendant fired the shot which resulted in plaintiff's injuries. The question is as to whether the circumstances in proof, when considered in the light most favorable to plaintiff, were sufficient to take the case to the jury. We think that they were; in fact, a study of all the facts and circumstances in proof strongly indicates that the unfortunate shot was fired by defendant. By a process of elimination, no other conclusion could reasonably be reached. It was only after the third shot by defendant that an outcry was heard from plaintiff, and when the parties rushed to his aid he was found in a wounded condition. Firring fired no shot and neither did Engh. The circumstances are such as to preclude even a suspicion that plaintiff shot himself. This leaves, other than defendant, only Dorr and the stranger. Whether Dorr fired the first shot, as testified to by some of the witnesses, or whether the first shot was fired by the stranger, as testified to by Dorr, it seems evident that it was not that shot which struck plaintiff because plaintiff afterward himself shot at the duck. Dorr testified that the stranger fired first at the duck which was flying in the direction of plaintiff, that it was after that that the second shot was fired by plaintiff and that it was only after defendant fired that he saw plaintiff fall into the water. The area of the shot as it struck plaintiff indicates that the gun from which the shot was discharged was in the hands of a person about the same distance from plaintiff as was the defendant. In fact, the proof indicates that defendant was the only person in a position as to distance and direction who could have inflicted the wound complained of. The pellets or shots which struck plaintiff were No. 4, which was the size of shot used by defendant.

■ The circumstances shown, together with certain admissions made by defendant subsequent to the shooting, admitted over defendant's objection (subsequently discussed), presented, in our view, a typical jury question as to whether the shot was fired by defendant as alleged. Defendant argues, however, that even so, there is no proof of negligence on his part. Again we think a jury question was presented and we find no reason to disturb the finding of the jury that the shot was negligently fired by defendant.

■ Defendant cites and relies upon numerous cases, including those from Illinois, to the effect that negligence is never presumed and is not to be inferred merely from the fact that an accident occurs, resulting in injuries. We think that is the general rule but it appears inapplicable to a situation where an injury results from the discharge of a gun in the hands of another. In the early case of Atchison v. Dullam, 16 Ill.App. 42, 46, the court stated: "Firearms are not usually discharged without the intervention of some human agency. A presumption, therefore, almost conclusive in its character, is raised, that when such weapons are discharged while in the possession and control of another, the firing is caused either by design, carelessness or inadvertence upon his part." This early pronouncement has been cited with approval in a number of subsequent cases. Harrison v. Allen, 179 Ill.App. 520, 524; Newkirk v. Gross, 203 Ill.App. 79, 83; Reed v. Kabureck, 229 Ill.App. 36, 42. In the latter case the court cites numerous cases, both from Illinois and other jurisdictions, in support of the statement, "The law in this State, however, is that a person in the sole control, possession and management of a dangerous weapon at the time it explodes and injures another has the burden of showing that such explosion was not by any negligence or fault on his part." This same case is also of interest from the fact that, just as in the instant case, there was a

denial by the defendant that he fired the shot which resulted in plaintiff's injuries.

True, the shooting in the present case occurred in the State of North Dakota and no case has been called to our attention which has considered the issue of negligence in connection with the discharge of a firearm. While the Illinois rule is not controlling, we think it is persuasive and, in the absence of a pronouncement by the courts of North Dakota, that it should be applied. Obviously the defendant, having denied that he fired the shot which resulted in plaintiff's injuries, was not in a position to offer proof of freedom from negligence. That was a situation, however, of his own creation, about which he is now in no position to complain.

Defendant makes much of his contention that the complaint did not state a cause of action upon which relief could be granted mainly for the reason that it fails to allege that plaintiff was in the exercise of due care and caution for his own safety. Numerous Illinois cases are cited in support of the proposition that freedom from contributory negligence is an essential allegation and that it must be proven as alleged.

Assuming, without deciding, that the substantive law of the forum, that is, of Illinois, see Palmer v. Hoffman, 318 U.S. 109, 116, 63 S.Ct. 477, 87 L.Ed. 645, rather than that of North Dakota, in which jurisdiction plaintiff received his injury, should be given effect, we are of the view that defendant is in no position to assert prejudicial error. The record hardly leaves room for doubt but that the now alleged deficiency in the complaint was an afterthought. No motion to dismiss was made and defendant's answer raised only the issue as to whether plaintiff was injured as the result of a shot from defendant's gun. And so far as we are able to discern from the record, the sole defense interposed by the defendant was a denial that the shot was fired by him. At the conclusion of plaintiff's case, a motion for a directed verdict was made by defendant, solely on the ground that the testimony was insufficient to show that plaintiff's injury was caused by the defendant. A motion predicated upon the same ground, made at the conclusion of all the evidence, was taken under advisement by the court.

After verdict, defendant made a motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial. Numerous grounds were asserted in support of such motion, none of which was directed at the insufficiency of the complaint. However, it is reasonable to conclude that the point was raised in oral argument before the court because Judge Campbell filed a memorandum in which he stated: "Defendant next asserts that the complaint fails to allege that plaintiff exercised due care for his own safety at the time he was injured. The courts of Illinois, and this court, when applying the law of Illinois, require that such an affirmative allegation be made. However, plaintiff's injuries were incurred in North Dakota and since jurisdiction is based solely upon diversity of citizenship, the law of negligence as defined by the courts of North Dakota is controlling. But the court need not concern itself with a review of the North Dakota authorities, for the absence of an allegation stating that plaintiff exercised due care is certainly not fatal to plaintiff's case. The jury was carefully instructed to find for defendant if it believed, from a preponderance of the credible evidence, that plaintiff failed to exercise due care."

The instruction thus referred to specifically enumerated four propositions which plaintiff was required to prove as a prerequisite to his right of recovery, including "That such injury and damage of which he now complains were not brought about or contributed to by any failure on his part to exercise ordinary care for his own safety at the time in question." And the instruction concluded by stating, "All four of these elements must be proved by the plaintiff before he can recover. They must be proved by a preponderance or greater weight of the evidence. Failure to prove any one or more of them defeats the plaintiff's right to recover."

Thus, irrespective of the issues made by the pleadings or the theory upon which defendant sought to defeat recovery, the fact remains that the cause was submitted to the jury upon issues so favorable to the defendant that no objection was made to the charge when the opportunity to do so was expressly given. In fact, we are of the view that the court's charge to the jury when read as a whole is more favorable to the defendant than the nature of the case required. (See cases cited, supra, relative to the burden cast upon a person who injures another by the discharge of a firearm.)

Defendant also contends that the court committed prejudicial error in the admission of testimony. This assignment refers to the admission, over defendant's objection, of two statements made by defendant at separate times. After the shooting, plaintiff was taken to a hospital. On that evening he was visited by defendant. Plaintiff was permitted to testify that defendant on that occasion said to him that he "did not have to worry about anything, that he would take care of my hospital bill and doctor bill and expenses." On the same evening, defendant had a conversation with Engh at the latter's place of business. Engh testified that he said to defendant, "It was very unfortunate that such a thing happened," and that defendant replied "that in all his hunting experience nothing like that had ever happened to him before."

Clearly the statement to Engh was admissible as an admission against interest, and while it is less certain, we think the statement made to plaintiff falls in the same category. In any event, we do not agree with defendant's contention that it was inadmissible because it was an offer in compromise. In Sullivan v. Heyer, 300 Ill.App. 599, 601, 21 N.E.2d 776, it was held error to refuse testimony that defendant paid plaintiff's bill while the latter was in the hospital. In Hanlon v. Lindberg, 319 Ill.App. 1, 48 N.E.2d 735, the court approved the admission of a statement by the defendant that he would pay for plaintiff's medical care and treatment. Referring to the admission of this testimony, the court stated 319 Ill.App. at page 7, 48 N.E.2d at page 738: "It in no way partook of any attempt by the parties to effect a compromise of a disputed claim. Such declarations of an adverse party are generally admissible against him. Where the parties are strangers under the law, and the one charged with being the wrongdoer, promises to pay or does pay for hospital and medical care, it is a proper circumstance for the consideration of the jury."

Defendant also assigns as error the action of the court in striking a portion of the testimony of Dr. Horace Turner, a physician offered by the defendant. In consideration of this alleged error, it is material to relate the circumstances under which Dr. Turner was injected into the case. Plaintiff while on the stand testified that only a portion of the shot had been removed from his body and that they were No. 4. He also stated that some shots remained in his body and indicated the location of one which was near the surface. He was asked if he was willing to have such shot removed, and he agreed. That evening, after the adjournment of court, plaintiff voluntarily went to Dr. Turner, a physician selected by the defendant, for the sole purpose of having the pellet removed. The next morning the doctor was called by defendant and, after stating his qualifications, testified as to the removal of a pellet, which he produced in court. Defendant then proceeded to examine the doctor relative to plaintiff's general physical condition. It was this portion of the testimony which the court, on motion of plaintiff, excluded. We think there was no error in this respect for the reason that the doctor's designation was for the sole purpose of removing the pellet. In any event, there was no prejudicial error because a reading of the excluded testimony demonstrates that it carried little, if any, probative value. This is as might be expected because the doctor was only concerned with the removal of the pellet and had neither the occasion nor the opportunity to make an examination for the purpose of determining plaintiff's

general physical condition. In this connection, it is pertinent to note that plaintiff, previous to the trial, made a trip to Chicago at defendant's request for the purpose of being examined, and was examined, by two physicians designated by defendant. Neither of these doctors was called as a witness. It thus appears that defendant sought to rely upon the testimony of a doctor who examined plaintiff for a limited purpose and who could have acquired at the most only meager information as to his physical condition, rather than upon those who could have given such testimony. Another significant fact in connection with the testimony of Dr. Turner is that although he produced in court the pellet which he had removed from plaintiff's body, it was not offered in evidence by defendant. A strong inference thus arises that the pellet which was removed was No. 4 and that its introduction would have corroborated and not impeached the testimony of plaintiff.

Other matters are argued by defendant as grounds for reversal, which we have considered and find without merit.

The judgment appealed from is

Affirmed.