**Ralph T. CRUMP, Appellant,**

v.

**Robert V. BROWNING, Appellee.**

**No. 1576.**

Municipal Court of Appeals for the District of Columbia.

Argued Nov. 29, 1954.

Decided Jan. 17, 1955.

Norman H. Heller, Washington, D. C., for appellant.

W. Byron Sorrell, with whom Cullen B. Jones, Jr., Washington, D. C., was on the brief, for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

This case grew out of the unintentional shooting of one friend by another. One morning plaintiff Crump and defendant Browning, both U. S. Park Police officers, met at Crump's home preparatory to going shopping together. While Crump was changing into civilian clothes, Browning took an automatic pistol from a dresser drawer and after it had been in his hands a short while it went off and fired a bullet

into Crump's chest. The wound resulted in painful injuries for which Crump was hospitalized for five days, bedded at home for three more weeks and suffered pain for an additional week or two. While he was convalescing at home, Browning gave him $25.00 toward his expenses and said, "that was all the money he had, but he would try to give plaintiff more money if he could, but since that time his family expenses have not permitted him to give more." Later Crump filed this action for his damages. The trial court disallowed his claim and ordered judgment for defendant. That decision is now here for review.

Crump was unable to tell how he happened to be shot. He said that when he had last handled the pistol he had removed the clip for the purpose of unloading and that he did not know there was still a bullet in the chamber. The gist of Browning's testimony was that Crump had invited him to look at the pistol, and, responding to a question, had said it was not loaded and that the clip of bullets was lying beside it. Browning further testified that he "saw the clip of bullets lying beside the gun and picked the gun up with the butt against the palm of his hand and his first two fingers gripping the outside of the trigger guard. Having had previous training in the handling of small arms in the Navy and in the Park Police, [he] pointed the barrel toward the ceiling, looked into the receiver and saw there was no clip in it. Still holding his fingers on the outside of the trigger guard and still pointing the pistol toward the ceiling, he looked at the safety lever and, seeing that it was halfway between the 'safe' and 'fire' markings, he moved the safety lever with his thumb toward the 'safe' marking. At that instant, the gun discharged a bullet from the chamber and plaintiff fell to the floor. Plaintiff, who was walking across the room and had reached a point in front of defendant was struck by the bullet in his right shoulder."

Our first concern is with a ruling by the trial judge that the doctrine of *res ipsa loquitur* was not applicable. We must hold that ruling erroneous. Nothing is better settled than the general principle that when the cause of an injury is (1) known, (2) in the defendant's control, and (3) unlikely to do harm unless the person in control is negligent, the defendant's negligence may be inferred without additional evidence. Washington Loan & Trust Co. v. Hickey, 78 U.S.App.D.C. 59, 61, 137 F.2d 677; see also, Jackson v. Capital Transit Co., D.C. Mun.App., 38 A.2d 108, affirmed, 80 U.S. App.D.C. 162, 149 F.2d 839, 161 A.L.R. 1110, certiorari denied 326 U.S. 762, 66 S.Ct. 143, 90 L.Ed. 459. It would be hard to imagine a situation more uniquely in the realm of *res ipsa loquitur* than this one. A man holds an automatic pistol in his hands, the pistol is discharged and wounds a friend. To say that *res ipsa* does not apply is to cast on the person shot the anomalous, if not impossible, burden of explaining how it happened. Long ago it was said: "Firearms are not usually discharged without the intervention of some human agency. A presumption, therefore, * * * is raised, that when such weapons are discharged while in the possession and control of another, the firing is caused either by design, carelessness, or inadvertence upon his part." Atchison v. Dullam, 16 Ill.App. 42. This seems to be the rule generally followed in cases involving firearms and explosives. Skinner v. Ochiltree, 148 Fla. 705, 5 So.2d 605, 140 A.L.R. 410; McLaughlin v. Marlatt, 296 Mo. 656, 246 S.W. 548; Morgan v. Mulhall, 214 Mo. 451, 114 S.W. 4; Naegele v. Dollen, 158 Neb. 373, 63 N.W.2d 165, in which several other cases are cited. Respected text writers have also given expression to the view that when a person is injured by discharge of a gun in the hands of one who has entire control over it, the one inflicting the injury is required to prove that the gun was not fired either intentionally or negligently but that the result was without fault on his part. Shearman and Redfield on Negligence, Rev. ed., Vol. 4, § 761; Thompson on Negligence, Vol. 1, § 787. We have no doubt at all that that is the rule which should have been applied here.

In fairness it should be said that appellee concedes that *res ipsa* is applicable here, but

says that he had rebutted the presumption of negligence. With this we cannot agree. We do not say that *res ipsa* compelled a finding for plaintiff or relieved him of his overall burden of proof. We do say, as authorities cited elsewhere in this opinion amply demonstrate, that circumstances like these gave rise to a rational inference of negligence, and relieved plaintiff of the necessity of producing evidence of specific acts of negligence. We say therefore that in refusing to apply the *res ipsa* doctrine the trial judge adopted an incorrect legal standard and one which unevenly tipped the scales on which the testimony was to be weighed. In depriving plaintiff of the benefit of that inference the court cast upon him the responsibility of explaining the shooting. We must rule that this misapplication of law constituted reversible error.

 Another matter requires some discussion in order to provide a guide when the case is tried again. Appellant says the trial judge incorrectly gauged defendant's responsibility by holding that he was required to use no more than ordinary care. The record does not seem to justify this complaint. It is true that at one point in his decision the judge did refer to "the care that an ordinary prudent man would use under the same or similar circumstances," but earlier he twice stated the test to be whether defendant exercised "the high degree of care" required by law under the circumstances. We think it is more accurate to say that in the handling of firearms or explosives one is charged with the highest degree of care. This may, in these circumstances, properly be described as a corollary of the *res ipsa* rule. It is dictated by considerations of logic and common sense. This view has been expressed in one form or another in a number of carefully considered decisions. Normand v. Normand, La.App., 65 So.2d 914; Luttrell v. Carolina Mineral Co., 220 N.C. 782, 18 S.E.2d 412; Skinner v. Ochiltree, supra; Naegele v. Dollen, supra. We think this court should not adopt a softer policy. An automatic pistol is not a harmless toy to be idly handled, as is attested by the long and tragic list of deaths and injuries inflicted by "unloaded" weapons. It is a dangerous and lethal instrumentality which every man is required to handle with wary circumspection—that is to say, with the highest degree of care. That being true generally, it is even more true of a police officer whose training and experience more intimately acquaint him with the nature and mechanism of firearms. See Rives v. Bolling, 180 Va. 124, 21 S.E.2d 775.

Reversed, with instructions to award a new trial.