396 So.2d 749 (1981)
Cheryl ROBERTSON, Appellant,
v.
DEAK PERERA (MIAMI), INC., Appellee.
No. 80-226.
District Court of Appeal of Florida, Third District.
March 24, 1981.
Rehearing Denied April 28, 1981.
*750 Alldredge & Gray and James H. Gray, Jr., Miami, for appellant.
Heller & Kaplan and Daniel Neal Heller and Lisa H. Green and Robert Golden, Miami, for appellee.
Before SCHWARTZ, NESBITT and BASKIN, JJ.
BASKIN, Judge.
Whether a dealer in Jamaican currency who fails to warn a customer that transporting Jamaican currency into Jamaica without authorization constitutes a crime under Jamaican law is answerable for negligence, is the question raised in this appeal. Appellant contends the dealer, Deak Perera (Miami), Inc., owed her a duty to warn of the danger inherent in transporting the currency into Jamaica. The trial judge disagreed and dismissed the complaint. We agree with the trial court and affirm the dismissal of the amended complaint.
According to appellant Robertson, the currency dealer located at Miami International Airport should have known the laws of the country whose currency it sold and should have foreseen and warned her against the risk. Had that been done, she asserts, she would not have suffered the embarrassment of arrest, detention, confiscation of her belongings, trial, and sentence of one day in jail to which she was subjected as a result of transporting Jamaican currency into Jamaica.
Appellant sought to recover damages predicated upon Deak Perera's negligence in failing to warn her of the danger. A cause of action in negligence, however, must be based upon a legal obligation for the benefit of another. W. Prosser, Law of Torts § 53 (4th ed. 1971). "Negligence in the air, so to speak, will not do." Pollock, Law of Torts 468 (13th ed. 1920). In the absence of a duty to the plaintiff, actionable negligence does not exist. 23 Fla.Jur., Negligence §§ 9, 10 (1959).
Appellant contends that appellee's duty stems from the contract of sale. A duty to exercise care may be created by a contract, 23 Fla.Jur., Negligence § 15 (1950), and the violation of that contractual duty may give rise to an action in tort. Here, however, appellee satisfied the contract by selling currency to appellant. No contractual violation occurred. No other duty to appellant remained to be performed.
Next, we consider appellant's contention that the potential or latent danger of transporting Jamaican currency into Jamaica imposed a duty to warn upon the seller. Under products liability law, a duty to warn exists only with regard to the manufacture or sale of a product which is potentially dangerous. A seller may be held liable for harm caused by a product which might reasonably have been expected to be capable of inflicting damage either by its nature or because it is defective. W. Prosser, Law of Torts § 96 (4th ed. 1971). The rule is entrenched in a long line of cases beginning with MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050 (1916). In the case under consideration, the money itself was not alleged to be defective *751 or potentially dangerous, and appellant's claim does not fall within the realm of products liability law. Appellant's damages did not result from the use of the money, but from transporting the currency into Jamaica when such conduct was prohibited by law. We therefore reject her contention.
Affirmed.
SCHWARTZ, Judge (dissenting).
According to the complaint, a professional foreign money trader sold Jamaican currency to the unknowledgeable plaintiff at the Miami International Airport. Even though, as common sense as well as the pleading tell us, the defendant should have known from the location of the transaction that the money was bought to take it into Jamaica, and even though it also knew or, in the exercise of its expertise, should have known that it was unlawful to do so, it failed to tell its customer that this was true.[1] The utterly foreseeable result was that she was arrested and confined in Jamaica when she got there with the currency. The court says that our law does not entertain the possibility of the defendant's liability under these circumstances. I totally disagree.
The majority bases its conclusion upon the non-existence of a legal "duty" imposed upon the seller of money to reveal that the purchaser, merely by possessing it, runs a known risk of criminal prosecution. By even putting the inquiry in this way, the court essentially frames the issue in terms of the result  a bootstrapping process in which courts should not indulge, at least not without acknowledging that this is being done. As Prosser says,
Th[e] concept of a relative duty is not regarded as essential by the continental law, and it has been assailed as serving no useful purpose, and producing only confusion in ours. Its artificial character is readily apparent; in the ordinary case, if the court should desire to find liability, it would be quite as easy to find the necessary "relation" in the position of the parties toward one another, and hence to extend the defendant's duty to the plaintiff. The statement that there is or is not a duty begs the essential question  whether the plaintiff's interests are entitled to legal protection against the defendant's conduct. It is therefore not surprising to find that the problem of duty is as broad as the whole law of negligence, and that no universal test for it ever has been formulated. It is a shorthand statement of a conclusion, rather than an aid to analysis in itself. It is embedded far too firmly in our law to be discarded, and no satisfactory substitute for it, by which the defendant's responsibility may be limited, has been devised. But it should be recognized that `duty' is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection. [e.s.]
W. Prosser, Law of Torts, § 53 (4th ed. 1971).
On the facts before us, I think that what is therefore the real question, "whether the plaintiff's interests are entitled to legal protection against the defendant's conduct," answers itself in the affirmative. There seems to be no basis whatever for insulating a defendant which has made a profit from a customer from the foreseeable consequences of its failure to reveal what it knows or should know about that very transaction.
The majority is apparently heavily influenced by the absence of a prior precedent which has imposed liability in a similar factual setting.[2] This should make no difference. *752 A common law duty exists when a court says it does because it thinks it should. By holding that no duty exists because no previous decision has recognized it, a court abdicates its judicial responsibility to a silent past. Holmes said that it was no less than "revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV."[3] It is even more unacceptable to adopt a rule on the ground that no one since Henry IV has held to the contrary.
Furthermore, if it is of any importance, already established "duties" do indeed cover the situation at hand. In Banfield v. Addington, 104 Fla. 661, 140 So. 893, 896 (1932), the supreme court quoted the following, admittedly conclusory, statement:
`One who enters on the doing of anything attended with risk to the persons or property of others is held answerable for the use of a certain measure of caution to guard against that risk * * * it is the duty of every artificer to exercise his art rightly and truly as he ought.' Webb's Pollock on Torts, pp. 533-536.
More specifically, Perera's responsibility conceptually does not differ from the duty of the seller of any product, however nondefective or innocuous in itself, to give warning that it may cause harm to a substantial group of its users ("Jamaican money will cause harm to those who take it to Jamaica.") and to give appropriate directions as to its proper use ("Don't take Jamaican money to Jamaica."). See Mathis v. National Laboratories, 355 So.2d 117 (Fla. 3d DCA 1978), and cases cited; 28 Fla.Jur. Sales § 161 (1968). The formulation of this doctrine in 2 Harper & James, Law of Torts § 28.7 (2d ed. 1956) seems to cover this case precisely:
[O]ne of the most common requirements of care is the giving of reasonable warning or instructions for safe use where the prudent maker would foresee that a condition or propensity of the product is likely not to be fully known and appreciated by those using it, and that some use to which the article is likely to be put will be unreasonably dangerous without that knowledge.
One of the strengths of the common law is said to be its ability to adjust and apply long-standing legal principles to novel situations. I fear that the court's decision in this case casts doubt upon the accuracy of that accolade.
NOTES
[1] All the defendant had to do was to inform the plaintiff to purchase the currency at its own airport office in Jamaica after she arrived. In that way, Robertson would have remained free, and Perera would not even have lost the benefit of the transaction.
[2] It is a moot point as to whether this is because, as Perera suggests, no one has had the unjustified gall to bring such an action, see Mims v. Mims, 305 So.2d 787 (Fla. 4th DCA 1974); because no prior plaintiff has had so imaginative a lawyer; or because no prior money changer has been so reckless with the well-being of its customers.
[3] O.W. Holmes, The Path of the Law, Jurisprudence in Action (1953).