505 So.2d 560 (1987)
VIC POTAMKIN CHEVROLET, INC., Appellant,
v.
Junie HORNE, Appellee.
No. 84-2813.
District Court of Appeal of Florida, Third District.
April 7, 1987.
*561 Wicker, Smith, Blomqvist, Tutan, O'Hara, McCoy, Graham & Lane and David T. Hewett, Miami, Richard A. Sherman, Fort Lauderdale, for appellant.
Headley & Webb, Daniels & Hicks and Patrice A. Talisman, Miami, for appellee.
Carlton, Fields, Ward, Emmanuel, Smith & Cutler and J. Robert McClure, Jr., and William C. Owen and George N. Meros, Jr., Tallahassee, for Florida Automobile Dealers Ass'n as amicus curiae.
Before SCHWARTZ, C.J., and HENDRY, HUBBART, NESBITT, BASKIN, DANIEL S. PEARSON, FERGUSON and JORGENSON, JJ.

ON MOTION FOR REHEARING EN BANC
JORGENSON, Judge.
The defendant, Vic Potamkin Chevrolet, Inc. [Potamkin], filed a motion for rehearing of the opinion of this court. The panel opinion affirmed the trial court's entry of final judgment in accordance with the jury verdict in favor of the plaintiff, Junie Horne. This court, on its own motion, has determined to grant rehearing en banc pursuant to Florida Rule of Appellate Procedure 9.331(c), on the ground that the case is of exceptional importance. The panel opinion filed in this case on August 12, 1986, is withdrawn, and the following opinion is substituted in lieu thereof.
The issue presented on appeal is whether this court should extend the law of negligent entrustment to include negligent sales. Now sitting en banc, we decline to so extend the law and, for the reasons which follow, reverse the judgment under review.
Nora Newry went to Vic Potamkin Chevrolet to buy a car. She had a restricted driver's license which requires that a licensed driver be present when she is driving. When Newry took a test drive, she had difficulty handling the car. At one point, the salesman riding with her grabbed the wheel to avoid an accident. The salesman told her that she should bring someone back with her when she came to pick up the car. Later that afternoon, Newry returned to complete the sale and pick up the car. The plaintiff below, appellee here, Junie Horne, is an old friend of Newry's and happened to be at the lot. Horne, who is a licensed driver, ended up driving home with Newry. The salesman who had accompanied Newry on the test drive predicted to a fellow employee that Newry would not drive one block without causing an accident. As Newry was driving west on MacArthur Causeway, she lost control of the car and hit a tree. Horne suffered injuries in the accident and, consequently, sued Potamkin and others. The case against Potamkin went to the jury on a theory of negligent entrustment. The jury returned a verdict against Potamkin for $195,000, and this appeal followed.
The concept of negligent entrustment is established in section 390 of the Restatement (Second) of Torts (1966), which provides:
One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.
We accept and approve the idea that a person who loans a chattel to a person he knows is not responsible should be held liable. To hold liable an automobile dealer who has sold a car and no longer has any control over it is another matter. Mullins *562 v. Harrell, 490 So.2d 1338 (Fla. 5th DCA 1986), is the first Florida case to adopt the Restatement (Second) version of section 390. That case involved the more traditional negligent bailment situation, and the question of negligent sale did not arise.[1] We suggest that, if the law is to be extended to include liability for negligent sales, it is for the supreme court or the legislature to do it. Gilliam v. Steward, 291 So.2d 593 (Fla. 1974); Hoffman v. Jones, 280 So.2d 431 (Fla. 1973) (supreme court may change judicially created law when great social upheaval dictates).
The common law and statutory law of Florida provide that once an automobile dealer has transferred ownership of an automobile to a buyer the dealer cannot be held liable for the buyer's subsequent negligent acts in the operation of the automobile. McAfee v. Killingsworth, 98 So.2d 738 (Fla. 1957); Palmer v. R.S. Evans, Jacksonville, Inc., 81 So.2d 635 (Fla. 1955); Whalen v. Hill, 219 So.2d 727 (Fla. 3d DCA 1969); § 319.22(2), Fla. Stat. (1985). A seller of a product can only be held liable if (1) the injury caused by the product could reasonably have been expected to occur either because of its inherently dangerous nature, see, e.g., Tampa Drug Co. v. Wait, 103 So.2d 603 (Fla. 1958); Edwards v. California Chem. Co., 245 So.2d 259 (Fla. 4th DCA), cert. denied, 247 So.2d 440 (Fla. 1971), or because the product was defective, see, e.g., Walker v. National Gun Traders, Inc., 116 So.2d 792 (Fla. 3d DCA 1960), or (2) the seller breaches a duty created either by contract, Robertson v. Deak Perera (Miami), Inc., 396 So.2d 749 (Fla. 3d DCA), rev. denied, 407 So.2d 1105 (Fla. 1981), or by statute, see, e.g., Prevatt v. McClennan, 201 So.2d 780 (Fla. 2d DCA 1967). A seller cannot be held liable for harm caused by a "defective" customer. Horne did not allege that the car sold to Newry was defective; nor is an automobile inherently dangerous in nature. Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629 (1920) (automobile, though in operation a dangerous instrumentality, is not dangerous per se). Further, Potamkin did not breach any contractual duties, see Robertson, or statutory obligations.
Horne argues that sellers have a duty to protect the world against incompetent product users. This duty exists only "in the air." See Robertson, 396 So.2d at 750 (quoting Pollock, Law of Torts 468 (13th ed. 1920)). The duty to protect strangers against the tortious conduct of another can only arise if, at the time of the injury, the defendant is in actual or constructive control of (1) the instrumentality, e.g., Avis Rent-A-Car Sys. v. Garmas, 440 So.2d 1311 (Fla. 3d DCA 1983) (owner of dangerous instrumentality liable to third persons for negligent use by anyone to whom it has been entrusted), rev. denied, 451 So.2d 848 (Fla. 1984), (2) the premises upon which the tort is committed, e.g., Allen v. Babrab, Inc., 438 So.2d 356 (Fla. 1983) (tavern owner has duty to protect patrons from disorderly conduct of third persons), or (3) the tortfeasor, e.g., Mercury Motors Express, Inc. v. Smith, 393 So.2d 545 (Fla. 1981) (employer vicariously liable for compensatory damages resulting from negligent acts of employees committed within scope of their employment even *563 if employer without fault); Snow v. Nelson, 450 So.2d 269 (Fla. 3d DCA 1984) (parent may be held responsible for torts of child), approved, 475 So.2d 225 (Fla. 1985). In the instant case, Potamkin did not have actual or constructive control over the instrumentality or the situs of the tort. Further, Newry did not stand in such a relationship to Potamkin as to warrant the application of the maxim qui facet per alium facet per se  "he who acts through another, acts by or for himself"  and, therefore, the doctrine of implied negligence is not implicated.[2] Even in the most attenuated of cases, e.g., cases where landowners are held liable for criminal acts of strangers, see, e.g., Fernandez v. Miami Jai-Alai, Inc., 386 So.2d 4 (Fla. 3d DCA 1980), there still must be some element of control upon which to predicate liability.[3] At the time of the accident, Potamkin had no control over the circumstances.
The creation of a duty on the part of the seller to guarantee the acts of a buyer would be manifestly unreasonable. Notwithstanding Horne's argument that we can limit negligent entrustment with respect to sales to instances where the seller "knows" of the buyer's incompetency to use the product, as a practical matter, sellers, in order to protect themselves from liability, would be required to probe into the buyer's background to determine the buyer's fitness to use the seller's product. The risks normally assumed by a buyer in the purchase of a product would remain with the seller. As a consequence, sellers would sell fewer products, or they would sell them at a higher cost. The imposition of this new duty not to sell would create uncertainty and retard the free flow of commerce. "A basic function of the law is to foster certainty in business relationships, not to create uncertainty by establishing ambivalent criteria for the construction of those relationships." Muller v. Stromberg Carlson Corp., 427 So.2d 266, 270 (Fla. 3d DCA 1983); see also Hartley v. Ocean Reef Club, Inc., 476 So.2d 1327, 1329 (Fla. 3d DCA 1985). We think it sufficient for a dealer prior to delivery of a car to determine that a buyer has a valid license. We think it inappropriate to further burden car dealers with an additional obligation of determining that every customer is a safe driver.
Finally, at the time of the events in question Newry was indeed legally authorized to drive. Newry was in full compliance with the conditions laid down by the State of Florida by virtue of having a licensed driver in the front seat with her. The licensed driver in this case is the plaintiff, Junie Horne. The fact that Potamkin's agent, the salesman, thought Newry was less than competent is simply not relevant. It is for the State of Florida, not Potamkin, to determine who is qualified to drive. The legislature has not commissioned automobile dealers to serve as agents of the Department of Motor Vehicles to act as a secondary screening mechanism for detecting bad drivers. Until such time and in view of the present statutory and common law scheme, this court should not impose on automobile dealers a duty not to sell. However, recognizing this issue to be a question of great public importance, we certify the following question to the Florida supreme court:
SHOULD FLORIDA ADOPT SECTION 390 OF THE RESTATEMENT (SECOND) OF THE LAW OF TORTS, AND, *564 IF SO, SHOULD THE SECTION BE CONSTRUED SO AS TO EXTEND LIABILITY TO A SELLER OF A CHATTEL AS WELL?
For the foregoing reasons, the judgment of the circuit court is reversed.
Reversed; question certified.
HENDRY, NESBITT, DANIEL S. PEARSON and FERGUSON, JJ., concur.
BASKIN, Judge (dissenting).
The en banc majority opinion misapprehends the issue before the court. The appropriate question is whether a dealer incurs direct liability for selling an automobile to an incompetent driver when the dealer knew of the incompetence before the sale; the question is not whether a seller is vicariously liable for the buyer's conduct occurring after the sale, as the majority discusses. The majority's opinion, predicated on its mischaracterization of the issue, permits a dealer to sell with impunity to individuals known to be drunk, drugged, or unfit to operate a vehicle, a distinct departure from public policy.
Prior to purchasing her car from Vic Potamkin, Inc. [Potamkin], Nora Newry [Newry] showed Potamkin salesman Oscar Irigaray [Irigaray] a valid but restricted driver's license. Newry's license was restricted because she had failed the driving portion of the licensing test. Irigaray knew that Newry was buying the car for herself and that she intended to drive it. He received ample evidence of her inability to drive when he took Newry for a demonstration ride. During the demonstration ride, Newry drove toward a line of parked cars. Next, Newry headed toward a bus. Irigaray was forced to wrest the steering wheel from her to avoid colliding with the bus. At the conclusion of the demonstration drive, Irigaray predicted to another Potamkin employee that Newry would not drive one block without causing an accident.
Later that same day, Newry returned and completed her purchase. While at the dealership, Newry saw an old friend, Junie Horne [Horne], and offered to drive her home. Horne had never driven with Newry and had no knowledge of her driving ability. At first, Newry drove the car without incident; however, approximately one mile from the Potamkin lot, Irigaray's prediction came true. Newry drove across the eastbound lane in which she was traveling, across the median, and the westbound lanes, and struck a tree. As a result of the accident, Horne sustained injuries to her head, arm, and ankle. Horne sued Newry, Irigaray, and Potamkin for damages to compensate her for her injuries. Only the case against Potamkin went to trial; it culminated in a jury award to Horne of $195,000 in compensatory damages. Potamkin appealed.
Potamkin's liability emanates from the doctrine of negligent entrustment:
One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.
Restatement (Second) of Torts § 390 (1966). Section 390 "applies to anyone who supplies a chattel for the use of another. It applies to sellers, lessors, donors or lenders, and to all kinds of bailors... ." (Emphasis supplied.) Restatement (Second) of Torts § 390 comment a (1966). Illustration six of comment b to section 390 furnishes an example:
A sells or gives an automobile to B, his adult son, knowing that B is an epileptic, but that B nevertheless intends to drive the car. While B is driving he suffers an epileptic seizure, loses control of the car, and injures C. A is subject to liability to C.
Section 390 governs when an owner lends a car to an incompetent driver, W. Prosser & W. Keeton, The Law of Torts § 73 (5th ed. 1984) (and cases cited at 523 n. 5), as well as when an owner sells to an incompetent driver, Johnson v. Casetta, 197 Cal. App.2d 272, 17 Cal. Rptr. 81 (1961).
Although Florida courts have not addressed the precise issue of a seller's direct *565 liability for a negligent sale, courts in other states have considered the question. Under the common law of negligent entrustment, a seller's liability for damages arising from the sale of a car to an incompetent driver continues after the actual sale. Flieger v. Barcia, 674 P.2d 299 (Alaska 1983); Casetta. Under California law, the gravamen of the tort of negligent entrustment is "the sale of the automobile with actual or presumptive knowledge that the incompetent person is going to drive it... ." Perez v. G & W Chevrolet, Inc., 274 Cal. App.2d 766, 768, 79 Cal. Rptr. 287, 289 (1969). California courts predicate the seller's liability for injuries sustained by third persons on a factual determination that the seller knew or should have known that the buyer of the car was incompetent to drive, although "in the absence of any such knowledge, [the car seller has] no legal duty or obligation to inquire." Casetta, 197 Cal. App.2d at 274, 17 Cal. Rptr. at 82. See Pugmire Lincoln Mercury, Inc. v. Sorrells, 142 Ga. App. 444, 445, 236 S.E.2d 113, 114 (1977) (Evidence must first show that "the vehicle was `entrusted' with actual knowledge of the intended driver's incompetence" before reaching questions as to whether "the evidence shows a `sale' and [whether] a `sale' is an entrustment... .") (emphasis in original). Clearly, Potamkin, the seller, knew that Newry was an incompetent driver and accordingly, does not escape liability for its negligent conduct.[1]
Contrary to the majority view, neither section 319.22(2), Florida Statutes (1981), nor the dangerous instrumentality doctrine insulates Potamkin from liability. Section 319.22(2) discontinues liability after transfer of title.[2]Palmer v. R.S. Evans, Jacksonville, Inc., 81 So.2d 635 (Fla. 1955); Whalen v. Hill, 219 So.2d 727 (Fla. 3d DCA 1969). Here, we are concerned with the seller's negligence prior to and concurrent with the sale. Because Potamkin's duty arose prior to the transfer of title, section 319.22(2), providing immunity for acts occurring after the transfer of title, offers Potamkin no support. Similarly, the dangerous instrumentality doctrine, which subjects an automobile owner to vicarious liability for the actions of a person to whom he has entrusted his car, Susco Car Rental Sys. v. Leonard, 112 So.2d 832 (Fla. 1959), is inapplicable to these facts because Potamkin's liability was not vicarious, but *566 arose from its direct obligation to refrain from selling a car once it possessed actual knowledge of the purchaser's deficient driving ability and her intention to drive. Thus, Potamkin's actual knowledge of Newry's poor driving skills[3] imposed a duty on it to refrain from selling her a car it knew she intended to drive. Potamkin's breach of that duty renders it liable for injuries sustained by Horne.
For these reasons, I would affirm the Final Judgment and certify the following question to the Supreme Court of Florida as one of great public importance:
IS A SELLER OF AN AUTOMOBILE NEGLIGENT UNDER SECTION 390 OF RESTATEMENT (SECOND) OF TORTS (1966) WHEN IT KNOWINGLY SELLS A CAR TO A DRIVER WHO, AFTER DEMONSTRATING DRIVING INCOMPETENCE, NEVERTHELESS INTENDS TO DRIVE THE VEHICLE?
SCHWARTZ, C.J., and HUBBART, J., concur.
NOTES
[1] We are aware that the Restatement (Second) version goes further than the original section 390 of the Restatement of the Law of Torts. One comment to section 390 of the Restatement (Second) states that section 390 "applies to sellers, lessors, donors or lenders, and to all kinds of bailors... ." Restatement (Second) of Torts § 390 comment a (1966).

The illustrations to the original section 390 did not include sales or gifts but were confined to bailments only. Rush v. Smitherman, 294 S.W.2d 873, 875 (Tex.Civ.App. 1956). Courts in other jurisdictions have refused to extend the doctrine of negligent entrustment beyond bailments to sales and gifts, Shipp v. Davis, 25 Ala.App. 104, 141 So. 366 (1932); Estes v. Gibson, 257 S.W.2d 604 (Ky. 1953); Brown v. Harkleroad, 39 Tenn. App. 657, 287 S.W.2d 92 (1955); Rush, and we think they are correct to do so.
Section 390 of the original Restatement of the Law of Torts has also been cited with approval in Rio v. Minton, 291 So.2d 214 (Fla. 2d DCA), cert. denied, 297 So.2d 837 (Fla. 1974), which involved a negligent bailment situation. The second district found that a cause of action was stated against the defendant who allowed the decedent to drive the defendant's car when he knew or should have known the decedent was intoxicated.
[2] Persons standing in such a relationship may include husband and wife, parent (or one in loco parentis), and child, parties to a joint enterprise, and employer and employee. 38 Fla. Jur.2d Negligence § 58 (1982).

To extend section 390 to cover negligent sales would effectively convert an arms length commercial relationship into a parental one. See Southern Am. Fire Ins. Co. v. Maxwell, 274 So.2d 579 (Fla. 3d DCA) (parents may be held liable for 5-year-old child's striking of pedestrian with bicycle where parents failed to exercise their parental duty to ascertain if child competent to control bicycle without supervision), cert. dismissed, 279 So.2d 32 (Fla. 1973). Potamkin is not Newry's parent, and Newry is not a child. (Nor is there any evidence that Newry was otherwise incompetent to make the decision as to whether to drive.)
[3] This court found an exception to the control principle in Carlisle v. Ulysses Line, 475 So.2d 248 (Fla. 3d DCA 1985). In Carlisle, however, there was a special relationship between the defendant common carrier and the plaintiff passenger upon which to predicate a duty. No relationship existed between Horne and Potamkin.
[1] Contrary to the majority's assertion, the duty imposed on Potamkin was not created "in the air," Robertson v. Deak Perera (Miami), Inc., 396 So.2d 749, 750 (Fla. 3d DCA), review denied, 407 So.2d 1105 (Fla. 1981), but arises from Potamkin's knowledge of Newry's lack of driving ability. Knowledge is one of the factors considered by Florida courts in determining whether a duty exists, which, when breached, gives rise to a cause of action in negligence. Nova University, Inc. v. Wagner, 491 So.2d 1116 (Fla. 1986) (child care institution that accepts emotionally disturbed children it knew or should have known had a propensity to commit acts that might harm others owes duty to exercise reasonable care in its operation to avoid harm to general public); Life Ins. Co. of Georgia v. Lopez, 443 So.2d 947 (Fla. 1983) (seller of insurance has duty to investigate where it has actual knowledge of beneficiary's murderous intentions to its insured); Kolosky v. Winn Dixie Stores, Inc., 472 So.2d 891 (Fla. 4th DCA 1985) (business has duty to maintain store in reasonably safe condition where it knew or should have known of dangerous condition created by boys playing in its store), review denied, 482 So.2d 650 (Fla. 1986); Noel v. M. Ecker & Co., 445 So.2d 1142 (Fla. 4th DCA 1984) (supplier of equipment owes duty to warn or to provide safety protection to user if it has actual or constructive knowledge that equipment is likely to be dangerous for use supplied); Hofmann v. Blackmon, 241 So.2d 752 (Fla. 4th DCA 1970) (physician has duty to use reasonable care to advise and warn members of patient's family of existence of disease once physician knows of patient's contagious disease), cert. denied, 245 So.2d 257 (Fla. 1971); Peeler v. Independent Life & Accident Ins. Co., 206 So.2d 34 (Fla. 3d DCA 1967) (complaint which alleged that insurance company knew or should have known that its doctor was not licensed in Florida and was committing illegal act stated cause of action for negligence).
[2] Section 319.22(2), Fla. Stat. (1981), states:

An owner or coowner who has made a bona fide sale or transfer of a motor vehicle and has delivered possession thereof to a purchaser shall not, by reason of any of the provisions of this law, be deemed the owner or coowner of such vehicle so as to be subject to civil liability for the operation of such vehicle thereafter by another when such owner or coowner has fulfilled either of the following requirements:
(a) When such owner or coowner has made proper endorsement and delivery of the certificate of title as provided by this law....
[3] Based on the well-settled principle that an agent's knowledge is imputed to the principal, Ruotal Corp., N.W., Inc. v. Ottati, 391 So.2d 308 (Fla. 4th DCA 1980); Bertram Yacht Yard, Inc. v. Florida Wire & Rigging Works, Inc., 177 So.2d 365 (Fla. 3d DCA 1965), we impute Irigaray's knowledge of Newry's deficient driving ability to Potamkin.