533 So.2d 261 (1988)
Junie HORNE, Petitioner,
v.
VIC POTAMKIN CHEVROLET, INC., Respondent.
No. 70499.
Supreme Court of Florida.
September 1, 1988.
Patrice A. Talisman of Daniels & Hicks, P.A., and Dennis Webb of Henry T. Courtney, P.A., Miami, for petitioner.
Richard A. Sherman and Rosemary B. Wilder of the Law Offices of Richard A. Sherman, P.A., Fort Lauderdale, for respondent.
J. Robert McClure, Jr., William C. Owen and Mary E. Haskins of Carlton, Fields, Ward, Emmanuel, Smith, Cutler & Kent, P.A., Tallahassee, amicus curiae for Florida Auto. Dealers Ass'n.
SHAW, Justice.
We review Vic Potamkin Chevrolet, Inc. v. Horne, 505 So.2d 560 (Fla. 3d DCA 1987), to answer a certified question of great public importance.
SHOULD FLORIDA ADOPT SECTION 390 OF THE RESTATEMENT (SECOND) OF THE LAW OF TORTS, AND, IF SO, SHOULD THE SECTION BE CONSTRUED SO AS TO EXTEND LIABILITY TO A SELLER OF A CHATTEL AS WELL?
Id. at 563-64. We have jurisdiction. Art. V, 3(b)(4), Fla. Const.
The facts of the case are set out in full in the decision below. For our purposes, it is enough to say that respondent automobile dealer sold a car and allowed the purchaser to drive away with the car even though its agent salesman knew that the purchaser was an incompetent driver. Shortly after leaving the dealership, the purchaser was involved in a single-car accident which injured her passenger, petitioner Horne. The issue before us is whether under these circumstances the seller of a motor vehicle is liable under a theory of negligent entrustment. We narrow the certified question to the facts of the case and hold that there is no liability.[1]
*262 It is uncontroverted that the sale of the automobile in question was completed and that respondent automobile dealer was not the owner of the car at the time of the accident. Section 319.22(2), Florida Statutes (1981), provides in pertinent part that the seller of a motor vehicle
who has made a bona fide sale or transfer ... and has delivered possession thereof to a purchaser shall not, by reason of any of the provisions of this law, be deemed the owner or coowner of such vehicle, so as to be subject to civil liability for the operation of such vehicle... .
A bona fide sale or transfer is customarily accomplished by delivery of a properly endorsed certificate of title to either the new owner or the Department of Motor Vehicles, or by placing in the mail to the Department a properly endorsed certificate of title or a notice of the sale in the form prescribed by the Department. Case law applying this statute holds that if the terms of the statute are complied with, there is no liability on the part of the seller for injuries suffered because of the negligent operation of the vehicle by the purchaser. Rutherford v. Allen Parker Co., 67 So.2d 763 (Fla. 1953); Whalen v. Hill, 219 So.2d 727 (Fla. 3d DCA 1969). Further, the same rule applies if the beneficial ownership of the vehicle has been transferred even if legal title has not yet been formally transferred in accordance with the statute. Palmer v. R.S. Evans, Jacksonville, Inc., 81 So.2d 635 (Fla. 1955).
It is clear from the above that under existing law there is no liability on the part of the seller of a motor vehicle where beneficial ownership or legal title, together with possession, have been transferred to a purchaser and injuries occur because of the negligence of the purchaser in operating the vehicle. In short, transfer of ownership cuts off liability on the part of the former owner. Petitioner urges that we focus on the act of selling rather than the transfer of legal title as beneficial ownership, and that we adopt the Restatement (Second) of Torts section 390 (1966) to the extent that it imposes liability on the seller of an automobile who knows that the purchaser is incompetent and intends to operate the vehicle. We decline to do so for three interrelated reasons. First, we are not persuaded that it would be possible for the courts to circumscribe the cause of action to instances where the seller becomes aware of the purchaser's incompetency as an incidental by-product of the normal sales routine. Stripped from this mooring, the terms "with knowledge" and "knowingly" would become an added source of litigation placing a new and uncertain burden on commerce and ordinary business relationships. Sellers would find it necessary to protect themselves from liability by inquiring into and verifying the competency of the purchaser to operate the vehicle. Such a rule would be inconsistent with the proposition that "[a] basic function of the law is to foster certainty in business relationships, not to create uncertainty by establishing ambivalent criteria for the construction of those relationships." Muller v. Stromberg Carlson Corp., 427 So.2d 266, 270 (Fla. 2d DCA 1983). Second, except for minor changes not pertinent here, section 319.22(2) has been the law since the enactment of chapter 23658, section 3, Laws of Florida (1947). Although the courts have consistently applied the statute to bar liability of former owners since its enactment, the legislature has chosen not to amend the statute, indicating that Rutherford and progeny accurately reflect legislative intent. It would be improper at this late date for the courts to discover a contrary intent. Third, even if we assume as petitioner urges that a new public policy is called for, it is highly desirable that this new policy be developed by the legislature rather than the courts. As the district court below recognized, the proposed change is one with broad implications which requires input from the various interests involved and a societal consensus. As we recognized in Shands Teaching Hospital and Clinics, Inc. v. Smith, 497 So.2d 644, *263 646 (Fla. 1986), "of the three branches of government, the judiciary is the least capable of receiving public input and resolving broad public policy questions based on a societal consensus." Moreover, by enacting section 319.22(2), the legislature has evidenced its intent to bar a cause of action against the seller once ownership and possession of a motor vehicle is transferred to the purchaser. Under these circumstances, "the legislature is best equipped to resolve the competing considerations implicated by such a cause of action." Bankston v. Brennan, 507 So.2d 1385, 1387 (Fla. 1987).
In refusing to apply the negligent entrustment doctrine to the sale of an automobile, we are mindful of the comments that accompany the Restatement (Second) of Torts section 390 (1966) which leave little doubt that the section is meant to apply to sellers, lessors, donors or lenders, and to all kinds of bailors. Despite this clear intent, only California and Alaska have found the seller of an automobile liable under the theory of negligent entrustment. Colorado, Georgia, Illinois, Kansas, Tennessee, and Texas have either avoided addressing the issue or refused to apply the doctrine to automobile sales.[2] We are unable to read into the laws of Florida a legislative intent to hold the seller of an automobile liable for negligent sale of the vehicle. In matter of fact, it appears that the Florida Legislature has chosen to restrict liability to automobile owners in possession (beneficial or legal). We have not been convinced that there is reason for or wisdom in changing this bright line approach.
We approve the decision below and answer the rephrased question in the negative.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD and GRIMES, JJ., concur.
KOGAN, J., dissents with an opinion, in which BARKETT, J., concurs.
KOGAN, Justice, dissenting.
The majority accurately and thoroughly discusses the liability of a seller for the buyer's negligence after the transfer of title has been completed. However, this case does not present a problem of postsale liability, but rather the question is whether the seller can be found negligent for selling an automobile to a buyer whom the seller knows beforehand is incompetent to operate that automobile. Because the majority opinion does not address what I perceive to be the real issue before this Court, I must dissent.
The buyer, Nora Newry, went to Potamkin's lot for the purpose of purchasing an automobile. The State of Florida had issued her a restricted driver's license allowing her to drive only when a fully licensed driver accompanied her in the front seat. While test driving a car, Newry twice came close to becoming involved in an accident due to her inability to control the car. At one point the salesperson who accompanied Newry on the test drive had to grab the steering wheel of the car to avoid a collision with a bus. Upon their return to the lot, the salesperson predicted to another Potamkin employee that Newry would not drive one block without causing an accident. The salesperson suggested to Newry that she bring a licensed driver with her when she returned to purchase the car.
When Newry returned to the lot to purchase the automobile, she saw an old friend, Junie Horne, and offered to drive Horne home. Horne was unaware that Newry was not a fully licensed driver nor was she aware of Newry's inability to safely operate an automobile. Approximately one mile from the Potamkin lot, Newry lost control of the car. After crossing two lanes of traffic, a median strip, and oncoming traffic, Newry collided with a tree. Horne suffered severe injuries for which the jury awarded her $195,000.
I am in no way suggesting, nor does Horne argue, that the seller has a duty or responsibility to investigate and determine the buyer's competency to operate an automobile. *264 However, if the seller has knowledge of the buyer's incapacity, he must decline to sell. I would adopt section 390 of the Restatement (Second) of Torts (1966), which states:
One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.
The comments to this section specifically provide that it "applies to sellers, lessors, donors or lenders, and to all kinds of bailors... ." Restatement (Second) of Torts § 390 comment a (1966). The Restatement provided as an example illustration six of comment b to section 390:
A sells or gives an automobile to B, his adult son, knowing that B is an epileptic, but that B nevertheless intends to drive the car. While B is driving he suffers an epileptic seizure, loses control of the car, and injures C. A is subject to liability to C.
The Restatement section, comments, and illustrations concerning the negligent entrustment of chattels to one the supplier knows is incompetent to operate the chattel clearly imposes liability on Potamkin in this case. There is no question that Potamkin knew of Newry's inability to drive. Under the Restatement, Potamkin is undoubtedly liable.
The remaining issue to be resolved is whether this Court should adopt section 390 of the Restatement (Second) of Torts. The majority presents three policy reasons for declining to adopt section 390. First, the majority believes that it would not be possible for courts to limit liability to only those instances in which the seller is aware of the purchaser's incompetency. The majority implies that courts will be unable to distinguish between those cases in which the seller has knowledge and when he or she does not have knowledge. This argument overlooks the fact that knowledge is a question of fact for the jury, not the court, to determine. It is fundamental to our judicial system that these questions be determined by the jury. The limitation of liability must be left to the jury when the evidence does not support the allegation that the seller has knowledge of the buyer's incompetence.
Second, the majority has determined that section 319.22(2) Florida Statutes (1981), and the legislative intent behind it, controls this situation. The statute provides immunity to the seller of a motor vehicle from the negligence of a buyer after the transfer of title has taken place. As stated earlier, this case involves the seller's own negligent entrustment of an automobile to one the seller knows is incapable of operating it. The seller's liability for posttransfer negligence of the buyer is simply not relevant. The legislative intent behind section 319.22(2), which deals only with postsale liability, has no bearing on the policy reasons for rejecting section 390 of the Restatement (Second) of Torts, which deals with negligent entrustment. These are entirely separate and distinguishable actions and must necessarily be examined as such. The legislative intent for one action cannot serve as a policy reason for rejecting the other.
Third, the majority declines to adopt section 390 because they believe that such a change is best accomplished by legislative action. I believe, however, that any change resulting from the adoption of section 390 would be a logical, natural progression of the present law of negligent entrustment. For example, as the district court acknowledged, a person who loans (rather than sells) a car to a person he or she knows is not responsible should be held liable. It is well within the province of this Court to simply extend this rule to include the sale of an automobile. I can think of no valid policy reason for holding liable one who loans another an automobile, but not one who sells an automobile. This change is evolutionary not revolutionary.
While the policy reasons for rejecting section 390 fail, the reasons for adopting *265 that provision are compelling. Under the majority's reasoning, an intoxicated person could purchase an automobile from a dealership and drive away, injuring another. Despite the seller's knowledge of the person's state of inebriation, the seller is shielded from liability. Likewise, a firearms seller could sell a loaded gun to a child and evade liability when that child shoots someone.[*] I believe that these results, as well as the one in this case, should be discouraged by our courts. We flout public policy when we allow dealers of guns and cars to sell their wares with impunity to whomever comes along, notwithstanding knowledge that the prospective buyer is incompetent to operate the item, yet fully capable of injuring or killing an innocent person.
The majority is concerned, as was the district court, with protecting the free flow of commerce and fostering certainty in business relationships. While I agree that this certainly is an admirable goal, I cannot agree that it outweighs the right to be protected from dangerous drivers. Certainty in business relationships should not take priority over the safety of our roads and highways.
The district court also expressed concern with requiring automobile dealers to inquire into a prospective buyer's driving ability beyond the licensing procedures performed by the state. I am not by any means suggesting that car sellers must do a background check on buyers or subject them to their own driving tests. I would merely hold, in accord with section 390 of the Restatement (Second) of Torts, that a seller must not sell to someone he or she knows is incompetent to drive a car. This rule would impose no responsibility or duty on the seller to investigate the buyer's driving ability. All a seller must do if he or she observes behavior which indicates an inability to operate an automobile is decline to sell to that person. The burden of proving that a seller knew of a buyer's incapacity would naturally be on the plaintiff.
I fully agree with Judge Baskin's dissent in the district court, and would therefore quash the majority opinion of the Third District Court of Appeal, and answer the certified question, as restated by Judge Baskin, in the affirmative. Accordingly, I would adopt section 390 of the Restatement (Second) of Torts (1966), and hold liable those who sell an automobile to one whom the seller knows is incompetent to operate that automobile.
BARKETT, J., concurs.
NOTES
[1] The dissenters below narrowed the question to:

IS A SELLER OF AN AUTOMOBILE NEGLIGENT UNDER SECTION 390 OF RESTATEMENT (SECOND) OF TORTS (1966) WHEN IT KNOWINGLY SELLS A CAR TO A DRIVER WHO, AFTER DEMONSTRATING DRIVING INCOMPETENCE, NEVERTHELESS INTENDS TO DRIVE THE VEHICLE?
Vic Potamkin Chevrolet, Inc., 505 So.2d at 566. We adopt this phrasing of the issue and answer in the negative.
[2] The 1987 Survey of Florida Law, 12 Nova L.Rev. 939 (1988).
[*] However, one Florida court has upheld the liability of a gun seller when he sells a gun and ammunition to a person he knows is mentally unstable when that person leaves the store and shoots someone. Angell v. F. Avanzini Lumber Co., 363 So.2d 571 (Fla. 2d DCA 1978).