568 So.2d 979 (1990)
Tracy WILLIAMS, Appellant/Cross-Appellee,
v.
Sidney M. BUMPASS, Jr., Appellee/Cross-Appellant.
No. 89-2078.
District Court of Appeal of Florida, Fifth District.
October 11, 1990.
Rehearing Denied November 1, 1990.
*980 E. Peyton Hodges and Steven W. Igou of Cameron, Marriott, Walsh & Hodges, P.A., Orlando, for appellant/cross-appellee.
F. Douglas McKnight, Orlando, for appellee/cross-appellant.
GOSHORN, Judge.
Tracy Ann Williams appeals a jury damage award in favor of Sidney M. Bumpass, Jr. The central issue on appeal is whether the jury erred in finding that Williams committed the tort of negligent entrustment of a firearm. We affirm.
This sad commentary on life in contemporary America occurred on February 4, 1990. Bumpass was busy moving into a new townhouse on Walden Woods Court in Orlando. His friend Joe Lilavois was helping him unload the truck. Williams lived a few houses down the street, however, Bumpass and Williams were not acquainted. As Bumpass and Lilavois unloaded the truck, a blue Mazda drove by at what Bumpass and Lilavois characterized as a high rate of speed. Bumpass yelled to the driver to slow down. The driver, Mark Shim, backed up, yelling that Bumpass had no place telling him how to drive. Bumpass responded that he did not want his dog or anything or anybody run over. At this point Shim got out of his car, shouting profanities. Shim then got back into the car and accelerated rapidly. He pulled into Williams' drive, got out, screamed something else and went inside.
Shim told Williams he was upset because he had been told to slow down, he had been hassled. Shim then left to get gas. Bumpass testified that Shim came speeding up the road and, about five minutes later returned, still speeding.
Shim pulled his car in front of Bumpass's townhouse and began yelling loudly at Bumpass, "Why don't you come down and settle this  you won't f____ with me anymore." Bumpass answered that if Shim got away from his car, Bumpass would walk over and talk to him. Shim sat on the fender and Bumpass walked over.
Shim and Bumpass began arguing. At some point Bumpass's puppy got between the two and Shim asked Bumpass, "Why are you so concerned about the dog? Are you f____ing your dog?" and with that Shim promptly kicked the dog in the head. Bumpass pushed Shim up against the car and Shim attempted a few karate kicks at Bumpass. They began to fight and struggle with each other. The wrestling continued until Bumpass managed to get Shim's shirt over Shim's head and get in a couple of good licks.
Shim then began yelping "Help me! Help me!" He yelled to Williams, who had been standing nearby, "Tracy, get my gun." Williams testified that she was aware that Shim owned a gun and kept it in the glove compartment of his car. Williams ran to the car, opened the glove compartment and retrieved the gun. She then took the gun out of its holster and pointed it at Bumpass. In a matter of seconds Bumpass turned, saw the gun and stopped fighting, saying something to the effect "No guns." He asked Williams to put down the gun. Lilavois testified that Williams held the gun pointed at Bumpass's chest as she guided her wrist towards Shim. Shim then took the gun, still aiming at Bumpass, and said "You shouldn't f____ with me."
Bumpass asked Shim to put the gun down, and was moving away, still facing Shim, when Shim discharged the gun.[1] A *981 bullet entered Bumpass's foot and exited through a center toe. Bones in Bumpass's foot were fractured and the toe later amputated. Bumpass eventually brought suit against Shim and Williams. The instant case, solely against Williams, proceeded to jury trial and the jury returned a verdict holding Williams 60% and Bumpass 40% responsible for Bumpass's injuries. The trial court granted Bumpass's motion to set aside the jury's finding of comparative negligence by Bumpass, but upheld the damage award.

NEGLIGENT ENTRUSTMENT OF A FIREARM
Williams first contends that she cannot be liable under a theory of negligent entrustment of a firearm because she was not the owner of the gun she retrieved for Shim. She claims that a finding of negligent entrustment requires an individual to have some degree of legal or possessory right to the firearm before liability can be imposed. We reject this argument. The supreme court has long held that a firearm is a dangerous instrumentality and that the very highest degree of care is to be exercised by those handling them. Skinner v. Ochiltree, 148 Fla. 705, 5 So.2d 605 (1941).
We recognize that most of the Florida law discussing liability arising from negligent entrustment of a firearm has involved liability attaching to a gun owner who loans or allows access to his gun. We nonetheless hold that liability is not predicated upon ownership of the firearm but rather upon whether the harm was or should have been foreseeable by the person entrusting or delivering the weapon to another.
This precise test was followed in Angell v. F. Avanzini Lumber Co., 363 So.2d 571 (Fla. 2d DCA 1978), in which a store was held liable for selling a gun to a woman whose eyes were glazed, who laughed, hugged and kissed an employee unknown to her and repeatedly held the unloaded gun to the employee's head, pulling the trigger. The woman later used the gun to kill someone. The Second District framed the decisive question as whether the store could have reasonably foreseen the consequences of the sale.
Foster v. Arthur, 519 So.2d 1092 (Fla. 1st DCA 1988) upheld a finding of negligent entrustment because the gun owner was a housemate of a convicted killer and kept the gun in an unlocked room to which the killer had access. The killer discovered the gun's location at the owner's invitation when the owner asked the killer to repair her bed. The gun was under the bed. Again the question was one of foreseeability. The court noted that a firearm is recognized as a dangerous instrumentality, but its owner "is not liable for its negligent or intentional use by another, unless the owner knew, or should have known, that the other person was likely to use it in a manner involving an unreasonable harm to others." Id. at 1094 (citations omitted).
In Rodriguez v. Esquijarosa, 391 So.2d 334 (Fla. 3d DCA 1980), the Third District affirmed a jury finding of liability in an instance where a defendant pumped a BB gun for a seven year old child immediately after observing the child point the gun at another. The court held that such was
a negligent act committed by the defendant, rendering him directly responsible for the foreseeable harm to the minor plaintiff, Esquijarosa, who was shot and injured when the seven-year-old fired the gun cocked by the defendant.
Id. at 335. Once again, in Rodriguez, as in Foster and Angell, the holding turned on the issue of foreseeability.
Looking to the facts sub judice, it was clearly foreseeable after William handed the gun to Shim that Shim would fire it at appellee. Mark Shim was furious, outraged and engaged in a knock-down fight with Bumpass. The evidence presented to the jury is sufficient to uphold a finding *982 that the gunshot was foreseeable.[2]

COMPARATIVE NEGLIGENCE
Williams next contends the court erred in setting aside the jury's finding of comparative negligence by Bumpass. We likewise find this argument without merit for several reasons.
First, we observe that "[w]here a party has inflicted an injury through negligence and his conduct in doing it was wanton or in reckless disregard of its injurious consequences, the contributory negligence of the person injured has no effect on the recovery in an action brought for that injury." 57 Fla.Jur.2d, Weapons § 11 (1985). See also Florida Southern R. Co., 30 Fla. 1, 11 So. 506 (1892); Acosta v. Daughtry, 268 So.2d 416 (Fla. 1st DCA 1972), cert. denied, 277 So.2d 788 (Fla. 1973). As was previously stated, Williams assumed the highest duty of care when she took control of the gun. The evidence is clear and unrefuted that she acted willfully and recklessly in handing it over to Shim, who was furious, and in the heat of battle. Under these circumstances the question of the effect of Bumpass's negligence, if any, on his recovery, is a legal matter for the determination of the court, not a factual matter to be decided by the jury.
Second, no contributory negligence can be assessed against Bumpass's damage award unless it was established that Bumpass had reason to know of the danger that Shim would shoot him with a gun provided by Williams. Acosta v. Daughtry, supra; A Trysting Place, Inc. v. Kelly, 245 So.2d 875 (Fla. 3d DCA 1971). The question is one of foreseeability. This court discussed foreseeability in Leahy v. School Board of Hernando County, 450 So.2d 883, 886 (Fla. 5th DCA 1984):
Foreseeable consequences are those which a person by prudent human foresight can be expected to anticipate as likely to result from an act, because they happen so frequently from the commission of such act that in the field of human experience they may be expected to happen again. Although the actual harm that results may be seen as not foreseeable, it is not necessary that the tortfeasor be able to foresee the exact nature and extent of the injuries in the precise manner in which they occur; rather, all that is necessary is that the tortfeasor be able to foresee some injury as likely to result in some manner as a consequence of his negligence. Goode v. Walt Disney World Company, 425 So.2d 1151 (Fla. 5th DCA 1982).
Under this definition, it was not foreseeable that Bumpass would be shot by Shim with a gun obtained by a third person. Bumpass specifically asked Shim to step away from Shim's car before Bumpass would walk the several yards to discuss Shim's grievance. Bumpass made this request precisely because he did not want Shim to reach into the car and grab a club or some other weapon. Moreover, the record is clear that Bumpass had no reason to know of any harm intended by Williams until he turned to see her pointing the gun at him, at which point he began backing away, saying "No guns." Accordingly, the jury's finding of contributory negligence was properly rejected by the trial court.
We find that Williams' remaining points on appeal are without merit and that discussion *983 would not contribute to the development of the law.
AFFIRMED.
COBB and PETERSON, JJ., concur.
NOTES
[1] Appellant argues in her brief that:

Plaintiff [Bumpass] refused to leave the scene of the fight after the gun was produced by Tracy Ann Williams, even after repeated requests by both Tracy Ann Williams and Mark Shim to do so.
No support for this assertion is found in the statement of facts in appellant's brief, nor does the brief contain any reference to the record where support for this statement can be found, as required by Rule 9.210(b)(3), Florida Rules of Appellate Procedure. See also the Committee Notes to Rule 9.210 wherein parties are encouraged to place every fact utilized in the argument section of the brief in the statement of facts. Our own review failed to disclose any record support for appellant's assertion. Counsel are reminded of their responsibility to assure the accuracy of their briefs.
[2] Angell, Foster, Rodriguez and our holding in this case are consistent with Comment (b) to section 390, Second Restatement of Torts (1965) which provides in pertinent part:

[O]ne who supplies a chattel for the use of another who knows its exact character and condition is not entitled to assume that the other will use it safely if the supplier knows or has reason to know that such other is likely to use it dangerously, as where the other belongs to a class which is notoriously incompetent to use the chattel safely, or lacks the training and experience necessary for such use, or the supplier knows that the other has on other occasions so acted that the supplier should realize that the chattel is likely to be dangerously used, or that the other, though otherwise capable of using the chattel safely, has a propensity or fixed purpose to misuse it.
The First District in Foster, after quoting Comment (b), observed that the Restatement has been "implicitly followed" by Florida courts dealing with negligent entrustment of a firearm, citing Brien v. 18925 Collins Avenue Corp., 233 So.2d 847 (Fla. 3d DCA 1970); Sixty-Six, Inc. v. Finley, 224 So.2d 381 (Fla. 3d DCA 1969).