662 So.2d 977 (1995)
K-MART CORPORATION, Appellant,
v.
Deborah KITCHEN, Appellee.
No. 93-3731.
District Court of Appeal of Florida, Fourth District.
October 18, 1995.
G. Bart Billbrough and Geoffrey B. Marks of Walton, Lantaff, Schroeder & Carson, Miami, and John Beranek of MacFarlane, Ausley, Ferguson & McMullen, Tallahassee, for appellant.
Richard A. Kupfer of Richard A. Kupfer, P.A., and Edward Ricci & Associates, P.A., West Palm Beach; Portner & Stine, P.C., Palm Beach Gardens; and Thomas, Garvey, Garvey & Sciotti, P.C., St. Clair Shores, Michigan, for Appellee-Deborah Kitchen.
KLEIN, Judge.
Thomas Knapp, after a day-long drinking spree, purchased a .22 caliber rifle at K-Mart and then shot his ex-girlfriend, leaving her a quadriplegic. A jury found K-Mart guilty of common law negligence, and returned a verdict in the amount of $12,580,768. We reverse because we conclude that where, as here, there is no statutory prohibition against the sale of a firearm to a person who is intoxicated, the seller is not responsible to a third person for the improper use of the firearm. We do certify the question as one of great public importance.
The facts, in a light most favorable to plaintiff, reflect that Knapp, by his own estimate, had consumed a fifth of whiskey and a case of beer, from the morning of December 14, 1987, when he started to drink, until he left a bar around 8:30 p.m., after becoming angry at plaintiff, who was his ex-girlfriend. Knapp drove to a K-Mart where he purchased a .22 caliber bolt action rifle and a box of bullets at approximately 9:45 p.m. Knapp then drove back to the bar and, after observing plaintiff leave in an automobile with friends, followed them in his truck and rammed them from behind when they were stopped at a light. He then forced them off the road and shot plaintiff, rendering her a permanent quadriplegic.
Knapp, who pled guilty to attempted murder and is serving a 55 year sentence, had no recollection of what occurred in K-Mart. The K-Mart clerk who sold Knapp the rifle testified that Knapp's handwriting on the federal form required for a firearm purchase was not legible, and that he then filled out another form for Knapp, and had Knapp initial each of the "yes/no" answers and sign his name at the end. The clerk testified that Knapp did not appear to be intoxicated, and that K-Mart has a policy against selling firearms *978 to intoxicated persons. There was no direct evidence regarding Knapp's behavior in K-Mart besides the testimony of this clerk. Plaintiff presented experts who testified that if Knapp had consumed as much alcohol during the day as Knapp had indicated, it would have been apparent to the clerk that Knapp was intoxicated.
Plaintiff's complaint alleged both common law negligence and violations of section 790.17, Florida Statutes (1987) (prohibiting sale to minors or persons of unsound mind), and the Federal Gun Control Act, 18 U.S.C. § 922 (prohibiting sale to minors, felons, unlawful drug users, adjudicated mental defectives, et cetera); however, the trial court directed a verdict for K-Mart on the statutory claims (which has not been cross-appealed) and submitted the case to the jury only on the theory of common law negligence. The court instructed the jury that K-Mart's violation of its own internal rule against selling firearms to intoxicated persons was evidence of negligence. We conclude that the jury should not have been so instructed, and that the trial court should have directed a verdict in favor of K-Mart.
The only Florida case cited by plaintiff in which the seller of a firearm has been held subject to liability for common law negligence is Angell v. F. Avanzini Lumber Co., 363 So.2d 571 (Fla. 2d DCA 1978). In that case, however, the customer was engaging in bizarre behavior in the store, and after observing that behavior, the store's employee called the sheriff's office and told one of the officers that a woman wanted to buy a rifle, but was acting strangely. The officer advised him that he did not have to sell the rifle, but he, nevertheless, sold her the rifle, along with ammunition, and shortly thereafter she shot and killed another person. The court held that the complaint stated a cause of action because the customer's erratic behavior made it foreseeable that someone would be injured as a result of the sale. In the present case there was no evidence that Knapp engaged in any type of erratic behavior, only that he consumed a substantial amount of alcohol.
In all of the other Florida cases relied on by plaintiff it was undisputed that the vendors violated the Federal Gun Control Act, K-Mart Enterprises of Florida, Inc. v. Keller, 439 So.2d 283 (Fla. 3d DCA 1983), and Coker v. Wal-Mart, 642 So.2d 774 (Fla. 1st DCA 1994); a Florida statute, Tamiami Gun Shop v. Klein, 116 So.2d 421 (Fla. 1959); or a local ordinance, Sogo v. Garcia's National Gun, Inc., 615 So.2d 184 (Fla. 3d DCA 1993).
Although we do not favor the indiscriminate sale of firearms, we are persuaded by decisions of the Florida Supreme Court involving analogous factual situations that we cannot extend the common law liability of a vendor under the circumstances of this case.
In Bankston v. Brennan, 507 So.2d 1385, 1387 (Fla. 1987), the Florida Supreme Court rejected common law liability of a social host who furnished alcoholic beverages to a minor who then drove while drunk and injured the plaintiff. After concluding that there was no violation of a statute, the court stated:
Petitioners' final argument is that ... we should recognize a common law cause of action in favor of similarly situated plaintiffs. We decline. We do not hold that we lack the power to do so, but we do hold that when the legislature has actively entered a particular field and has clearly indicated its ability to deal with such a policy question, the more prudent course is for this Court to defer to the legislative branch. (Footnote omitted.)
We cannot distinguish the present case from Bankston. As it has with alcohol, our legislature has also entered the field of regulating the sale of firearms. Section 790.17, Florida Statutes (1987), which was in effect when this incident occurred, provides:
Whoever sells, hires, barters, lends, or gives any minor under 18 years of age any pistol, dirk, electric weapon or device, or other arm or weapon, other than an ordinary pocketknife, without permission of the parent of such minor, or the person having charge of such minor, or sells, hires, barters, lends, or gives to any person of unsound mind an electric weapon or device or any dangerous weapon, other then an ordinary pocketknife, is guilty of a misdemeanor of the first degree, punishable *979 as provided in s. 775.082 or s. 775.083 or s. 775.084.
And in 1991, several years after this incident, the Florida legislature passed section 790.151, Florida Statutes (1991), which makes it unlawful for a person to use a firearm while under the influence of alcohol or a controlled substance. The legislature has not, however, gone so far as to prohibit the sale of a firearm to a person who is known to be intoxicated, as some states have. See, e.g., Miss. Code Ann., § 97-37-13 (1972).
Since our legislature has not extended vendor liability for the sale of a firearm under the circumstances of this case, our imposition of liability on K-Mart here would be taking a step which our supreme court declined to take in Bankston.[1] We therefore conclude that the trial court should have directed a verdict in favor of K-Mart.[2]
Because we anticipate plaintiff will seek review of our decision in the Florida Supreme Court, we address another issue raised by K-Mart which would, if we were not reversing for entry of a directed verdict, require a new trial.
The evidence showed that K-Mart had an internal policy that it would not sell a firearm to a visibly intoxicated person, and over K-Mart's objection the trial court instructed the jury that a violation of the internal policy or procedure was evidence of negligence. In Steinberg v. Lomenick, 531 So.2d 199 (Fla. 3d DCA 1988), the third district held, while recognizing that defendant's own rules of conduct are relevant,[3] that it would be improper to instruct the jury that a violation of such a rule is evidence of negligence. The court quoted from Professor Wigmore, who explained:
To take [the defendant's] conduct as furnishing a sufficient legal standard of negligence would be to abandon the standard set by the substantive law, and would be improper... . The proper method is to receive it, with an express caution that it is merely evidential and is not to serve as a legal standard."
2 J. Wigmore, Evidence § 461, at 593.
In Buczkowski v. McKay, 441 Mich. 96, 490 N.W.2d 330 (1992), the Michigan Supreme Court disapproved the same type of jury instruction:
Imposition of a legal duty on a retailer on the basis of its internal policies is actually contrary to public policy. Such a rule would encourage retailers to abandon all policies enacted for the protection of others in an effort to avoid future liability.
Id., 490 N.W.2d at 332, n. 1. See also Judge Baskin's concurring opinion in Steinberg, 531 So.2d at 201.
Rather than instructing this jury that the violation of the internal rule was negligence, the court should have instructed that: "An internal rule does not itself fix the standard of care." Steinberg, 531 So.2d at 200; Nesbitt v. Community Health of South Dade, Inc., 467 So.2d 711, 715 (Fla. 3d DCA 1985), citing Wigmore.
We therefore reverse and remand for entry of a judgment in favor of K-Mart, but certify the following question as one of great public importance:

*980 CAN A SELLER OF A FIREARM TO A PURCHASER KNOWN TO THE SELLER TO BE INTOXICATED BE HELD LIABLE TO A THIRD PERSON INJURED BY THE PURCHASER?
SHAHOOD, J., concurs.
GLICKSTEIN, J., concurs in part and dissents in part with opinion.
GLICKSTEIN, Judge, concurring in part and dissenting in part.
I agree with certification of the question and with reversal because of the jury's being instructed over appellant's objection that violation of the K-Mart internal policy was evidence of negligence. It is unfortunate that the discussion in Steinberg v. Lomenick, 531 So.2d 199 (Fla. 3d DCA 1988), rev. denied, 539 So.2d 476 (Fla. 1989), as to the reasonable limit to which a trial court may go, was not recognized by appellee at the trial level.
However, I disagree with the majority's reliance upon Bankston v. Brennan, 507 So.2d 1385 (Fla. 1987), and Horne v. Vic Potamkin Chevrolet, Inc., 533 So.2d 261 (Fla. 1988), and believe the issue of foreseeability here was properly submitted to the jury. See Angell v. F. Avanzini Lumber Co., 363 So.2d 571 (Fla. 2d DCA 1978).
The court in Bankston concluded that it could not consider common-law liability because the legislature had considered and limited the scope of civil liability. Horne, too, involved judicial reluctance to tread on legislative turf. Neither situation exists here.
Accordingly, I view the door of common-law liability as being wide open and regret its being shut.
NOTES
[1] See also Horne v. Vic Potamkin Chevrolet, Inc., 533 So.2d 261 (Fla. 1988), in which an automobile salesman sold and delivered a vehicle to a purchaser whom the salesman knew was an incompetent driver. In holding that the plaintiff whom the customer struck shortly after leaving the dealership had no cause of action against the dealer, the Florida Supreme Court, citing Bankston, again said that expansion of the liability of a vendor was for the legislature.
[2] Although we rest our conclusion that K-Mart cannot be held liable entirely on Florida law, we would note that plaintiff has not cited any cases from other jurisdictions in which the seller of a firearm was held liable in a similar factual situation. In Buczkowski v. McKay, 441 Mich. 96, 490 N.W.2d 330, 334-35 (1992), the Michigan Supreme Court found that there would be no common law liability for the sale of shotgun ammunition to a person who was intoxicated, stating:

Recognizing such a duty would place on the retailer a duty to discover each customer's fitness to purchase any product that could conceivably harm unknown third parties... . The result here was no more foreseeable than the potential harm from any product sold to an apparently inebriated customer that might be used to injure third parties. (Footnote omitted).
[3] Marks v. Mandel, 477 So.2d 1036 (Fla. 3d DCA 1985).