697 So.2d 1200 (1997)
Deborah KITCHEN, Petitioner,
v.
K-MART CORPORATION, Respondent.
No. 86812.
Supreme Court of Florida.
July 17, 1997.
Richard A. Kupfer of Richard A. Kupfer, P.A., West Palm Beach, Raymond Ehrlich of Holland & Knight, Jacksonville, and Joel D. Eaton of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, for Petitioner.
John Beranek of Ausley & McMullen, Tallahassee, and G. Bart Billbrough and Geoffrey B. Marks of Walton, Lantaff, Schroeder & Carson, Miami, for Respondent.
Arthur Joel Berger, Miami, and Dennis A. Henigan, Gail R. Robinson and Mark D. Polston, *1201 Washington, DC, for The Center to Prevent Handgun Violence; American Public Health Association; Florida Police Chiefs Association; Tampa Bay Area Chiefs of Police Association; Florida Coalition Against Domestic Violence, Inc.; Center Against Spouse Abuse, Inc.; and The National Association of Social Workers, Inc., Florida Chapter, Amici Curiae.
Jack W. Shaw, Jr. of Brown, Obringer, Shaw, Beardsley & DeCandio, P.A., Jacksonville, for International Mass Retail Association; National Sporting Goods Association; and The Florida Retail Federation, Amici Curiae.
ANSTEAD, Judge.
We have for review a decision ruling upon the following question certified to be of great public importance:
CAN A SELLER OF A FIREARM TO A PURCHASER KNOWN TO THE SELLER TO BE INTOXICATED BE HELD LIABLE TO A THIRD PERSON INJURED BY THE PURCHASER?
See K-Mart Corp. v. Kitchen, 662 So.2d 977, 979 (Fla. 4th DCA 1995). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. For the reasons expressed below, we answer the question in the affirmative.

FACTS
We initially note that in urging us to answer the certified question in the negative, respondent must accept the "worst case scenario" of the factsthat a retail vendor should not be held liable for selling a firearm to a purchaser who is patently drunk and who immediately thereafter injures a third person with the weapon. On the night of December 14, 1987, petitioner Deborah Kitchen was shot by her ex-boyfriend, Thomas Knapp, and rendered a permanent quadriplegic, shortly after Knapp purchased a .22 caliber bolt-action rifle from a local K-Mart retail store. Knapp testified that he had consumed a fifth of whiskey and a case of beer beginning that morning and up until he left a local bar around 8:30 p.m. Knapp drove from the bar to a local K-Mart store where he purchased a rifle and a box of bullets. He returned to the bar and, after observing Kitchen leave in an automobile with friends, followed in his truck. He subsequently rammed their car, forcing it off the road, and shot Kitchen at the base of her neck. See Kitchen, 662 So.2d at 977-78.
At trial, Knapp had no recollection of exactly what occurred in K-Mart when he bought the gun, and there was no other direct evidence regarding Knapp's behavior during the sale. On the other hand, the plaintiff's experts testified that if Knapp had consumed as much alcohol during that day as he indicated, it would have been apparent to the clerk that Knapp was intoxicated. The clerk who sold the gun testified that K-Mart has a policy against selling firearms to intoxicated persons and that Knapp did not appear to be intoxicated. However, the clerk also testified that although he asked Knapp to fill out a required federal firearms form, Knapp was unable to do so because his handwriting was not legible. The clerk then filled out another form himself, and had Knapp initial each of the "yes/no" answers and sign his name at the bottom of the form. Id.
Kitchen's action against K-Mart was in three (3) counts, alleging common law negligence, violations of section 790.17, Florida Statutes (1987) (prohibiting sale to minors or persons of unsound mind), and violations of the Federal Gun Control Act, 18 U.S.C. § 922 (1994) (prohibiting sale to minors, felons, unlawful drug users, adjudicated mental defectives, et cetera). The trial court ruled as a matter of law that K-Mart was not liable on the statutory claims, and submitted the negligence claim to the jury. The jury found K-Mart liable to Kitchen for negligence, and awarded substantial damages. The trial court entered a judgment on the verdict. The Fourth District reversed the judgment, concluding as a matter of law that because of statutory pre-emption K-Mart could not be held liable for negligence in selling a gun to an intoxicated person.[1]

*1202 LAW AND ANALYSIS
We have held that to bring a common law action for negligence in Florida, the "minimal threshold legal requirement for opening the courthouse doors" is a finding that a defendant's alleged actions created a foreseeable "zone of risk" of harming others. McCain v. Florida Power Corp., 593 So.2d 500, 502 (Fla.1992); accord Kaisner v. Kolb, 543 So.2d 732, 735 (Fla.1989). We explained in McCain that:
Florida, like other jurisdictions, recognizes that a legal duty will arise whenever a human endeavor creates a generalized and foreseeable risk of harming others....
Where a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses.
593 So.2d at 503 (footnote omitted) (quoting Kaisner v. Kolb, 543 So.2d at 735). We further explained that "as the risk grows greater, so does the duty, because the risk to be perceived defines the duty that must be undertaken." Id. In essence, the question before us here is whether, under Florida law, the risk of danger is sufficient to create a duty on the part of a provider of a firearm not to give a firearm to someone the provider knows or should know is intoxicated. The petitioner urges us to adopt section 390 of the Restatement (Second) of Torts (1965) as the legal standard for determining the liability of one who provides a firearm to another under the circumstances presented here.
More commonly known as the law of negligent entrustment, section 390, entitled "Chattel for Use by Person Known to be Incompetent," sets out the following standard of care:
One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.
The doctrine of negligent entrustment was actually established prior to the publication of the first Restatement of Torts, and is a recognized civil cause of action in nearly every state. See Robert M. Howard, The Negligent Commercial Transaction Tort: Imposing Common Law Liability on Merchants for Sales and Leases to "Defective" Customers, 1988 Duke L.J. 755, 759-60 (1988) (citing Douglass v. Hartford Ins. Co., 602 F.2d 934, 936 (10th Cir.1979)). Before focusing on the recognition of a cause of action under the Restatement, we first address the Fourth District Court's conclusion that it was required to set aside the trial court judgment because of decisions of this Court concerning statutory interpretation and pre-emption.

FOURTH DISTRICT DECISION
The Fourth District cited Bankston v. Brennan, 507 So.2d 1385 (Fla.1987), and Horne v. Vic Potamkin Chevrolet, Inc., 533 So.2d 261 (Fla.1988), in support of its conclusion that Kitchen had failed to state a valid cause of action for common law negligence in Florida. We conclude that both Bankston and Horne are distinguishable and not controlling as to the circumstances of the instant case.

HORNE
In Horne, an automobile dealer was sued for negligent entrustment after the purchaser, observed by the dealer's agent to be an erratic driver, drove away from the dealership after purchasing the vehicle and promptly ran into another car. Horne, 533 So.2d at 261. The trial court entered judgment for the injured occupant of the other car, but the Third District reversed and certified the following question to this Court:
SHOULD FLORIDA ADOPT SECTION 390 OF THE RESTATEMENT (SECOND) OF THE LAW OF TORTS, AND, *1203 IF SO, SHOULD THE SECTION BE CONSTRUED SO AS TO EXTEND LIABILITY TO A SELLER OF A CHATTEL AS WELL?
Id. We declined to answer the certified question, however, and narrowed our analysis and resolution to the facts of the case. We reworded the question as follows:
IS A SELLER OF AN AUTOMOBILE NEGLIGENT UNDER SECTION 390 OF RESTATEMENT (SECOND) OF TORTS (1966) WHEN IT KNOWINGLY SELLS A CAR TO A DRIVER WHO, AFTER DEMONSTRATING DRIVING INCOMPETENCE, NEVERTHELESS INTENDS TO DRIVE THE VEHICLE?
Id. at 261 n. 1. At the time of the incident in Horne, a Florida statute specifically precluded the imposition of civil liability on an automobile seller after a bona fide transfer of the vehicle. § 319.22(2), Fla. Stat. (1981). Thus, we concluded in Horne that we could not hold an automobile seller responsible given the legislature's clear intent to bar any liability in section 319.22(2). 533 So.2d at 263.[2] Because the certified question addressed in Horne was narrowed and limited to the facts of the case, this Court specifically did not address the broader question of the application of section 390 in Florida.

BANKSTON
In Bankston, a social host served alcohol to a minor, who, while intoxicated, drove away and collided with a vehicle driven by the plaintiffs. 507 So.2d at 1386. The plaintiffs sued the social host, alleging a violation of section 768.125, Florida Statutes (1983). Section 768.125 states:
A person who sells or furnishes alcoholic beverages to a person of lawful drinking age shall not thereby become liable for injury or damage caused by or resulting from the intoxication of such person, except that a person who willfully and unlawfully sells or furnishes alcoholic beverages to a person who is not of lawful drinking age or who knowingly serves a person habitually addicted to the use of any or all alcoholic beverages may become liable for injury or damage caused by or resulting from the intoxication of such minor or person.
The trial court dismissed the plaintiff's action and the Fourth District affirmed.
On review, this Court recognized that prior to the statute's effective date, a third-party plaintiff could bring a common law negligence action against a vendor for selling alcohol to a minor. 507 So.2d at 1386. Finding that Florida courts, by recognizing a common law action, "had broadened a vendor's liability for injuries to minors or third parties which resulted in the illegal sales [of alcohol] to minors," we concluded that "prior to the statute's effective date, such a cause of action did exist."[3] 507 So.2d at 1386.
We explained, however, that in response to this judicial recognition of a vendor's civil liability, the legislature had enacted section 768.125, and that such enactment represented "a limitation on the already existing liability of vendors." Id. at 1386.[4] We also noted that although vendor liability had previously been recognized by the courts, the liability of a social host had not been previously recognized. Id. at 1387. Finally, given the legislature's statutory abrogation of a vendor's liability for common law negligence, and its intent to permit liability only for "willfully and unlawfully" providing alcohol, we felt precluded by legislative policy expressed in the statute from expanding liability through judicial approval of a previously unrecognized cause of action against a social host. Id. Simply put, we chose not to expand liability in a field in which the legislature had so expressly chosen to restrict liability.
In this case, the Fourth District refused to recognize Kitchen's cause of action for common *1204 law negligence because it found that, similar to the effect of section 768.125 in Bankston, the Florida legislature had abrogated any form of common law liability when it enacted the criminal statutes consisting of section 790.17 and section 790.151, Florida Statutes (1991).[5]Kitchen, 662 So.2d at 978-79. However, the criminal statutes at issue in the present case are entirely different from the civil liability statute involved in Bankston. In Bankston, this Court determined that the legislature had entered into the field of regulating the civil liability for distribution of alcohol with the enactment of a civil statute expressly limiting the civil liability of alcohol vendors. Id. at 1386. Conversely, as noted above, the Florida statutes upon which the Fourth District relied are purely criminal statutes imposing criminal sanctions.
The language contained in sections 790.17 and 790.151, unlike the language in section 768.125, does not limit a commercial gun retailer's civil liability. The legislature simply has not "entered into the field" of regulating the civil liability of vendors for the sale of firearms with the crimes and penalties set forth in sections 790.17 and 790.151. If anything, we conclude that the statutes in question here, which constitute an extension of criminal liability in the general area of firearm transactions, are indicative of broad public policy concerns about the dangers of firearms. Indeed, the legislature has even chosen to impose criminal liability on parents and guardians who negligently allow children access to deadly firearms. § 790.174, Fla. Stat. (1995). See also Restatement (Second) of Torts § 288C (1965) ("Compliance with a legislative enactment or an administrative regulation does not prevent a finding of negligence where a reasonable man would take additional precautions"). Thus, we conclude that the decisions in Horne and Bankston are not controlling as to the issue before us in this case.

SECTION 390 IN FLORIDA
Although we declined a direct discussion of section 390 in Horne, the district courts of appeal previously have adopted and applied the principles set out in section 390 in a number of cases involving the negligent entrustment of a firearm. In fact, we find that Florida appellate courts already have recognized a common law cause of action virtually identical to the one Kitchen brought here.
In Angell v. F. Avanzini Lumber Co., 363 So.2d 571, 572 (Fla. 2d DCA 1978), a gun dealer sold a firearm to a woman who exhibited "erratic behavior." She had glazed eyes, was laughing and giggling, and was flirting with a store employee. She repeatedly aimed the gun at the clerk's head and made several attempts to load the rifle in the store. The woman shot and killed a man shortly thereafter. The decedent's estate sued the gun dealer under statutory and common law negligence. After the trial court dismissed the plaintiff's complaint, the Second District reversed, recognizing that a dealer in firearms could have foreseen the probability of someone being injured after selling a firearm and ammunition to an "erratic" purchaser. Id. at 571-72.
Similarly, in Foster v. Arthur, 519 So.2d 1092 (Fla. 1st DCA 1988), the appellate court recognized that "Florida courts have implicitly *1205 followed the Restatement in cases dealing with negligent entrustment of a firearm," and expressly relied on comment b to section 390, which states:
[O]ne who supplies a chattel for the use of another who knows its exact character and condition is not entitled to assume that the other will use it safely if the supplier knows or has reason to know that such other is likely to use it dangerously, as where the other belongs to a class which is notoriously incompetent to use the chattel safely, or lacks the training and experience necessary for such use, or the supplier knows that the other has on other occasions so acted that the supplier should realize that the chattel is likely to be dangerously used, or that the other, though otherwise capable of using the chattel safely, has a propensity or fixed purpose to misuse it.
In affirming a judgment predicated upon a violation of this standard, the First District followed section 390 in holding that a gun owner could be held liable if the owner made a gun accessible to a person whom she knew or should have known was likely to use it in a manner involving an unreasonable risk of harm to others. Foster, 519 So.2d at 1094.
Recently, in Williams v. Bumpass, 568 So.2d 979 (Fla. 5th DCA 1990), the district court approved the imposition of liability on a bystander who handed a gun owner his gun while the owner was engaged in a fistfight with the plaintiff. In affirming, the Fifth District found that foreseeability of harm, rather than ownership, determined whether an action existed for negligent entrustment, and affirmed the imposition of liability because the bystander should have foreseen the risk of a shooting under the circumstances. Williams, 568 So.2d at 981-82. The district court recognized that the holdings in this case and other Florida cases "are consistent with Comment (b) to section 390, Second Restatement of Torts (1965)." Id. at 982 n. 2.[6]
Other Florida decisions, although not expressly adopting the Restatement, have followed its standard in finding defendants liable for the negligent entrustment of a firearm. See, e.g., Rodriguez v. Esquijarosa, 391 So.2d 334 (Fla. 3d DCA 1980) (affirming a finding of liability against a defendant who pumped a BB gun for a child after witnessing the child threaten another with the gun); Sixty-Six, Inc. v. Finley, 224 So.2d 381 (Fla. 3d DCA 1969) (finding a hotel liable to injured patron where hotel's employee shot patron and hotel knew employee was drinking, carried an unlicensed gun, and had used it on two prior occasions); Seabrook v. Taylor, 199 So.2d 315 (Fla. 4th DCA 1967) (finding liability for negligent entrustment of a firearm to a child based on common law principles).

OTHER STATES
Florida courts are not the only ones that have adopted and applied the principles of section 390. For example, in Bernethy v. Walt Failor's, Inc., 97 Wash.2d 929, 653 P.2d 280 (1982), the Supreme Court of Washington unanimously recognized the liability of a vendor of a firearm under circumstances almost identical to those here. The Bernethy court addressed this certified question:
Did the trial court err in granting respondent's motion for summary judgment dismissing this wrongful death action, brought on the theory that respondents had negligently furnished a firearm to an intoxicated person who then shot and killed appellant's decedent?
653 P.2d at 281. In answering this question in the affirmative, the Court concluded:
The evidence viewed in a light most favorable to appellant indicates that Failor placed a gun and ammunition in the hands of a visibly intoxicated person who immediately returned to the tavern one-half block away and shot decedent. The facts herein are disputed and the inferences to be drawn from them may vary. Accordingly, it is for a jury to decide whether Failor's actions were the proximate cause of Phoebe's death.
*1206 Id. at 284. Although, as in the instant case, the sale of the firearm in Bernethy did not violate any criminal statutes,[7] the Washington Supreme Court expressly relied upon section 390 of the Restatement (Second) in holding that a retail store owner has a duty not to sell a firearm to a purchaser known to be intoxicated. Id. at 282-83.
Similarly, in Howard Brothers of Phenix City, Inc. v. Penley, 492 So.2d 965 (Miss. 1986), a Mississippi retailer provided a pistol and ammunition to a man who apparently was mentally deranged and under the influence of alcohol and drugs. 492 So.2d at 966. The purchaser then held another customer hostage with the gun. The hostage sued the gun retailer for personal injuries, and a jury found the retailer liable for negligently entrusting the pistol to the purchaser. On review, the Mississippi Supreme Court held:
In this state, in this day and age we are simply not going to assert that there is no common law duty, aside from statute, for a dealer in firearms to have in effect in his place of business some safety precautions and procedures designed to prevent precisely what occurred here.
Penley, 492 So.2d at 968. The Court approved the jury's verdict.
On the other hand, the district court below cited Buczkowski v. McKay, 441 Mich. 96, 490 N.W.2d 330 (1992), as factually analogous to the present case. Kitchen, 662 So.2d at 979 n. 2. However, we find Buczkowski to be distinguishable. The assailant in Buczkowski purchased from a retailer ammunition that he retrieved from a self-serve shelf without the assistance of anyone. Id. 490 N.W.2d at 332. The Michigan Supreme Court found that the retail seller could not reasonably foresee that the assailant would use the ammunition to shoot the plaintiff. Id. at 336. In the instant case, however, Knapp purchased a firearm and ammunition. The rifle had to be retrieved by a store clerk, and Knapp had to be assisted in filling out papers in the clerk's presence. We consider the foreseeability of harm that could result from Knapp's purchase of a firearm to be significantly greater than the mere purchase of ammunition considered in Buczkowski.

A FIREARM IS A DANGEROUS INSTRUMENTALITY
Consistent with section 390's foreseeability standard and its application here is another well-established common law principle of negligence in Florida recognizing that a firearm is a "dangerous instrumentality."[8] We have held that because the use of a dangerous instrumentality, like a firearm, involves such a high degree of risk of serious injury or death, a person who handles or deals in firearms is expected to exercise the "highest degree of care." Skinner v. Ochiltree, 148 Fla. 705, 708, 5 So.2d 605 (1941); see also McCain, 593 So.2d at 503. As we explained in Skinner:
They [firearms] are classified as dangerous instrumentalities.... The highest degree of care is necessary in the manipulation or use of firearms in the presence of or in the vicinity of others so as to avoid injuries to others, and if injury results from the negligent discharge of firearms used or handled by another, ... the law makes the person causing the injury liable.
148 Fla. at 708, 5 So.2d 605. Furthermore, liability for the entrustment of a dangerous instrument, such as a firearm, to an intoxicated person is specifically addressed in comment c to section 390 of the Restatement:
So too, if the supplier knows that the condition of the person to whom the chattel is supplied is such as to make him incapable of exercising the care which it is reasonable to expect of a normal sober adult, the supplier may be liable for harm sustained by the incompetent although such person deals with it in a way which *1207 may render him liable to third persons who are also injured.
(Emphasis added); see also Reginald J. Holzer, Liability to the Injured Third Party for Negligent Entrustment of a Firearm, 59 Chi. Bar Rec. 346 (1978).[9]
Not surprisingly, this Court also has recognized that the high degree of risk inherent in the use of a dangerous instrument escalates when such an instrument is used by a person who is intoxicated and unable to exercise caution. Ingram v. Pettit, 340 So.2d 922 (Fla.1976) (describing how intoxication can affect the operation of an automobile); see also Horne v. Vic Potamkin Chevrolet, Inc., 533 So.2d 261, 265 (Fla.1988) (Kogan, J., dissenting). Although, as noted earlier, this Court passed on the opportunity to expressly adopt the common law principles set out in section 390 of the Restatement under the specific facts of Horne, Justice Kogan actually recognized then the broad dangers in the negligent entrustment of a firearm to an incompetent person:
[A] firearms seller could sell a loaded gun to a child and evade liability when that child shoots someone. I believe that these results, as well as the one in this case, should be discouraged by our courts.
Id. at 265. Justice Kogan's reasoning rings tragically true in this case, and we echo it here. Also see Rodriguez v. Esquijarosa and Seabrook v. Taylor, cited above. Ironically, and to its credit, K-Mart itself has recognized the danger of placing dangerous firearms in the hands of intoxicated persons and has adopted a strict policy forbidding such practice.

PUBLIC POLICY
We agree with petitioner Kitchen that we should follow the lead of our district courts and the high courts in Washington and Mississippi and approve the application of the principles of section 390 of the Restatement to the circumstances of this case. Further, and unlike the statutes relating to civil liability involved in Bankston and Horne, we find there are no analogous Florida statutes which limit the civil liability of gun dealers for injuries caused by the negligent sale of a firearm to an intoxicated person.
We conclude that recognition of a cause of action here, involving the especially dangerous combination of alcohol and firearms, is consistent with Florida public policy as developed in the courts and by the legislature. If ever Florida public policy was clear, it is so in its recognition and disapproval of the deadly combination of alcohol and firearms and the danger such combination poses to our citizens. We cannot close our eyes to this obvious danger or fail to impose some responsibility on those who control access to dangerous firearms. As the Mississippi high court declared, "in this day and age" there is simply no excuse for a gun dealer not to be held accountable for what is alleged to have occurred here. Penley, 492 So.2d at 968.
Generally, as discussed above, we have recognized traditional common law causes of action unless liability is limited or abrogated by legislative enactments. Under our rules of statutory construction, a statute will not displace the common law unless the legislature expressly indicates an intention to do so. Carlile v. Game & Fresh Water Fish Commission, 354 So.2d 362 (Fla.1977). As we have explained:
Statutes ... will not be interpreted to displace the common law further than is clearly necessary. Rather, the courts will infer that such a statute was not intended to make any alteration other than was specified and plainly pronounced. A statute, *1208 therefore, designed to change the common law rule must speak in clear, unequivocal terms, for the presumption is that no change in the common law is intended unless the statute is explicit in this regard.
Carlile, 354 So.2d at 364 (quoting 30 Fla. Jur. Statutes, § 130 (1974)). Recognizing that the theory of liability advanced by Kitchen falls squarely within traditional and well-established principles of common law negligence in Florida, we conclude that not only has the Florida legislature not abrogated the common law liability of firearms sellers, but that the criminal statutes that do exist in this area are strong evidence of a public policy against the negligent placement of a dangerous firearm in the hands of an intoxicated person. See Bernethy.
Further, since vendor liability for negligently entrusting a gun to an incompetent person has been recognized by the district courts since at least 1978, this Court is hardly being asked to create an entirely new negligence theory of liability. Contrary to respondent's assertions, this Court need only recognize that, while the factual scenario in this case is a new one, Kitchen's theory of liability is not. See Restatement (Second) of Torts § 390 (1965) (discussing traditional common law principles of negligence). Kitchen's theory of liability against a seller falls neatly within the well-established common law action for negligent entrustment articulated in section 390:
The rule stated applies to anyone who supplies a chattel for the use of another. It applies to sellers, lessors, donors, or lenders, and to all kinds of bailors, irrespective of whether the bailment is gratuitous or for a consideration.
Restatement (Second) of Torts § 390 cmt. a (1965) (emphasis added). Like the plaintiff in Angell, Kitchen brought a common law negligence action against K-Mart based upon credible evidence presented to the jury that Knapp was behaving in a manner evidencing his severe intoxication while purchasing a gun, and that he shot Kitchen with the firearm shortly thereafter.

CONCLUSION
We hold that an action for negligent entrustment as defined under section 390 of the Restatement is consistent with Florida public policy in protecting its citizens from the obvious danger of the placement of a firearm in the hands of an intoxicated person, as has already been recognized in the district courts in Florida. We further conclude that, in accord with our decisions in Kaisner and McCain, selling a firearm to an intoxicated person satisfies the "minimal threshold legal requirement" recognized by this Court as necessary in order to bring a common law cause of action before a jury.
In accordance with the above, we answer the certified question in the affirmative, quash the decision of the district court of appeal, and remand for further proceedings consistent herewith.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING and WELLS, JJ., concur.
NOTES
[1] Notwithstanding the certified question, the district court also reversed and remanded this case for a new trial on the grounds that the trial court improperly instructed the jury that K-Mart's alleged violation of its own internal policy or procedure was evidence of negligence. 662 So.2d at 979. We decline to address that issue here as it is not part of the certified question, and we do not disturb that part of the decision below.
[2] We also stated that we were "not persuaded that it would be possible for the courts to circumscribe the cause of action to instances where the seller becomes aware of the purchaser's incompetency as an incidental by-product of the normal sales routine." Id. at 262.
[3] See Davis v. Shiappacossee, 155 So.2d 365 (Fla. 1963); Prevatt v. McClennan, 201 So.2d 780 (Fla. 2d DCA 1967).
[4] (Citing Armstrong v. Munford, Inc., 451 So.2d 480, 481 (Fla.1984), and Forlaw v. Fitzer, 456 So.2d 432, 433 (Fla.1984)).
[5] Section 790.17, Florida Statutes (1987), which was in effect at the time of the incident, states:

Whoever sells, hires, barters, lends, or gives any minor under 18 years of age any pistol, dirk, electric weapon or device, or other arm or weapon, other than an ordinary pocketknife, without permission of the parent of such minor, or the person having charge of such minor, or sells, hires, barters, lends, or gives to any person of unsound mind an electric weapon or device or any dangerous weapon, other than an ordinary pocketknife, is guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
Although section 790.151, Florida Statutes (1991), was not in effect at the time of the incident, it was still cited in support of the court's deferral:
(3) It is unlawful and punishable as [a misdemeanor of the second degree] for any person who is under the influence of alcoholic beverages, any chemical substance set forth in s. 877.111, or any substance controlled under chapter 893, when affected to the extent that his normal faculties are impaired, to use a firearm in this state.
[6] (Citing Angell v. F. Avanzini Lumber Co., 363 So.2d 571 (Fla. 2d DCA 1978); Foster v. Arthur, 519 So.2d 1092 (Fla. 1st DCA 1988); and Rodriguez v. Esquijarosa, 391 So.2d 334 (Fla. 3d DCA 1980)).
[7] The opinion noted the existence of criminal statutes concerning firearms similar to the Florida criminal statutes cited in the Fourth District's opinion and discussed above.
[8] See Skinner v. Ochiltree, 148 Fla. 705, 5 So.2d 605 (1941); Foster v. Arthur, 519 So.2d 1092 (Fla. 1st DCA 1988); Horn v. I.B.I. Sec. Service of Florida, Inc., 317 So.2d 444 (Fla. 4th DCA 1975), cert. denied 333 So.2d 463 (Fla.1976); Brien v. 18925 Collins Avenue Corp., 233 So.2d 847 (Fla. 3d DCA 1970); Seabrook v. Taylor, 199 So.2d 315 (Fla. 4th DCA), cert. denied, 204 So.2d 331 (Fla. 1967).
[9] The author, a circuit court judge in Illinois, published the following statement in this Chicago Bar Record article after presiding over a case where an intoxicated man purchased a gun, shot his wife leaving her permanently paralyzed, and then shot and killed himself:

Melding the gun-sale-to-minor or other known incompetent cases with the car-loan-to-drunks cases compels the following conclusion: One who knowingly sells an article to a person incompetent in its use, with reasonable foreseeability that injury to others may occur as a result of such use, can be held accountable in tort to such others for the injuries sustained thereby.
The above discussion leads to the conclusion that a person who knowingly sells or otherwise provides a weapon to an incompetent, where negligent misuse can reasonably be anticipated, can be held accountable in tort to others who are injured by the misuse of the weapon.
Id. at 352.